STATE OF NORTH CAROLINA v. CARL JAMES BALL

No. 89

(Filed 20 January 1971)

1. **Constitutional Law § 30— right to speedy trial**

    The fundamental law of this State reserves to each defendant the right to a speedy trial.

2. **Constitutional Law § 30— denial of speedy trial — factors for consideration**

    The length of the delay, the cause of the delay, prejudice to defendant and waiver by defendant are interrelated factors to be considered in determining whether a trial has been unduly delayed.

3. **Constitutional Law § 30— denial of speedy trial — burden of proof**

    The burden is on the accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution.

4. **Constitutional Law § 30— speedy trial — delay of 145 days between indictment and trial**

    The trial court properly denied defendant's motion that the charges against him be dismissed on the ground that he had been denied the right of a speedy trial by a delay of 145 days between indictment and trial, where the court found that the delay was caused by a crowded docket and by lack of a sufficient number of courtrooms and terms of court, that the case had been calendared for trial on one or more occasions but had not been reached because of the press of other business, and that the delay was partially to permit the prosecution of other criminal cases in which defendants had been in jail longer than this defendant, the record does not disclose that defendant has been prejudiced by the delay, and defendant has failed to show that the delay was due to the neglect or willfulness of the State.

5. **Criminal Law §§ 34, 128— evidence of defendant's involvement in another offense — testimony admitted without objection — objection sustained to one question — mistrial**

    In this prosecution for felonious breaking and entering, felonious larceny and safecracking, the trial court did not err in failing to declare a mistrial on its own motion when defendant's accomplice in the crimes testified, without objection, that defendant was also charged in another safecracking for which the accomplice was then in prison, and when the solicitor asked a police officer whether defendant was being held for return to another county after this case was closed, to which objection was sustained.

6. **Criminal Law § 128— mistrial — discretion of court**

    Whether a mistrial should be ordered is a matter of discretion, and the judge's action is not reviewable unless there are circumstances establishing gross abuse.

APPEAL by defendant from judgment of *McKinnon, J.*, July 6, 1970 Special Criminal Session of CUMBERLAND County Superior Court.

Criminal prosecution on separate bills of indictment consolidated for trial, charging defendant with felonious breaking and entering, felonious larceny, and safecràcking.

The facts concerning the commission of the crimes charged are not germane to the questions raised by this appeal, but are briefly summarized as follows: James McLean is manager and part owner of the Hope Mills Tire Sales Company. On 22 December 1969, when he came to work, he found that an unbarred window in the rear of the store was broken open and that a safe containing account books, ledgers, and about $25 in silver was missing. Telford Oxendine testified that on 21 December 1969 he agreed to help defendant steal the safe, and that on 22 December 1969, about 1:30 a.m., they went to McLean's store where Oxendine watched as defendant broke open the rear window and entered the store. The two then loaded the safe into Oxendine's car, drove to defendant's home, and cut the safe open. Oxendine later showed police Officer Frye where the safe was buried, approximately 400 yards from defendant's home. The back of the safe had been ripped open and some $15 was missing.

Defendant's defense is an alibi. Two witnesses testified that they saw the defendant between 8:00 and 8:30 in the evening of 21 December 1969, and his wife testified that on the night of 21 December 1969 defendant came home about 8:30 or 9:00 p.m. and did not leave the house until the next morning. Defendant did not testify.

From a verdict of guilty as charged and sentence imposed, defendant appealed. The case was transferred to this Court under its transferral order of 31 July 1970.

*Attorney General Robert Morgan, Deputy Attorney General R. Bruce White, Jr., and Staff Attorney Richard N. League for the State.*

*William S. Geimer, Assistant Public Defender, for defendant appellant.*

MOORE, Justice.

Defendant first assigns as error the court's denial of his motion that he be discharged because he had not been given a speedy trial. In support of this motion, defendant's counsel made a statement to the court, and the solicitor for the State made a statement in reply. From these statements the court made the following findings of fact:

"1. That the defendant was arrested on or about the 9th day of January, 1970, and remained in the Cumberland County Jail since that time except for a period of about two days, beginning on March 31, 1970, when he escaped from the Cumberland County Jail.

"2. That preliminary hearing in the District Court was had on January 23, 1970, at which time he was represented by employed counsel and bond for his appearance was then set at $5,000.00. That shortly thereafter the Public Defender's office was assigned as counsel for the defendant and has represented him since. That a true bill of indictment was returned by the grand jury on February 16, 1970. That by letter dated April 7, 1970, from Mr. William S. Geimer, Assistant Public Defender, to the Solicitor demand was made for the trial of defendant as third in priority for those for whom demand was made at that time and that on June 8, 1970, a similar demand was made by Mr. Geimer, in which the defendant was listed as the first of those demanding trial. That the case has been calendared on one or more occasions for trial and that it has not been continued either at the request of the state or of the defendant, but that it has not been reached during any week calendared because of other business of the court.

"3. That since the February 16, 1970, Session there have been _____ weeks of Superior Court for the trial of Criminal Cases of which in _____ weeks two sessions of Superior Court for the trial of criminal cases were held; that those weeks of court have been fully utilized for the trial of criminal cases and that a majority of the jury trials for the time in which the defendant was in jail have been cases in which the defendants have been in jail longer than this defendant.

"4. That the solicitor has available to him by law, himself and two assistant solicitors for the prosecution of the docket; that there are available in the Cumberland County Courthouse only two courtrooms suitable for the trial of jury cases and that these have been regularly in use.

"5. That no showing has been made in behalf of the State for any reason for the delay of this case other than the press of other business and no showing has been made by the defendant of any special prejudice to his defense by reason of the delay."

[1-3] The fundamental law of this State reserves to each defendant the right to a speedy trial. *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892; *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274; *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309; *State v. Patton,* 260 N.C. 359, 132 S.E. 2d 891; *State v. Webb,* 155 N.C. 426, 70 S.E. 1064. This was true long before the decision in *Klopfer v. North Carolina,* 386 U.S. 213, 18 L. Ed. 2d 1, 87 S.Ct. 988 (1967), in which the Supreme Court of the United States held that the right to a speedy trial guaranteed by the Sixth Amendment to the Constitution of the United States was made applicable to the states by the Fourteenth Amendment. The circumstances of each particular case determines whether a speedy trial has been afforded. Undue delay cannot be defined in terms of days, months, or even years. The length of the delay, the cause of the delay, prejudice to the defendant, and waiver by the defendant are interrelated factors to be considered in determining whether a trial has been unduly delayed. The burden is on the accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. *State v. Hatcher, supra; State v. Johnson, supra; State v. Hollars, supra;* Note, *Pre-indictment Delay and the Question of When the Right to a Speedy Trial First Attaches,* 6 Wake Forest Intra. L. Rev. 139 (1969).

Defendant relies upon *Dickey v. Florida,* 398 U.S. 30, 26 L. Ed. 2d 26, 90 S.Ct. 1564 (1970), contending that under that case he is entitled to his discharge. In *Dickey* the Court held that a delay of seven years was unwarranted and ordered defendant released. However, Mr. Chief Justice Burger, speaking for the Court in that case, said: "Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some

delays inevitable," and in the same case Mr. Justice Brennan, in a concurring opinion, said:

> "What are the criteria to be used in judging the constitutionality of those delays to which the safeguard applies? This Court has stated that '[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' *Beavers v. Haubert, supra* [198 U.S. 77, 49 L. Ed. 950, 25 S.Ct. 573 (1905)], at 87, 49 L. Ed. at 954. We have also observed that '[w]hile justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed.' *Smith v. United States,* 360 U.S. 1, 10, 3 L. Ed. 2d 1041, 1048, 79 S.Ct. 991 (1959). It appears that consideration must be given to at least three basic factors in judging the reasonableness of a particular delay: the source of the delay, the reasons for it, and whether the delay prejudiced interests protected by the Speedy Trial Clause."

And in another portion of this same opinion, Mr. Justice Brennan continues:

> " . . . Perhaps the most important reason for the delay of one criminal prosecution is to permit the prosecution of other criminal cases which have been in process longer than the case delayed. . . . "

*Dickey* is clearly distinguishable from the case now under review. That case involved a delay of seven years; the case at bar involved a delay of 145 days from indictment to trial. In *Dickey,* Mr. Chief Justice Burger noted that actual prejudice to Dickey was shown by the fact that police records were lost, two of his witnesses had died, and another witness was unavailable.

[4]  Judge McKinnon found that the delay in the present case was caused by a crowded docket, and by lack of a sufficient number of courtrooms and terms of court. Judge McKinnon further found that the case had been calendared for trial on one or more occasions but had not been reached because of the press of other business, and that the delay was partially to permit the prosecution of other criminal cases in which the defendants had been in jail longer than this defendant. The

State v. Ball

record does not disclose that defendant has been prejudiced in any manner by the delay, and defendant has failed to show that the delay was due to the neglect or willfulness of the State. Under these facts, we hold that the trial court correctly denied defendant's motion that he be discharged because he had not been given a speedy trial.

[5] Defendant next assigns as error the trial court's failure to declare a mistrial on its own motion because the following occurred at the instance of the solicitor:

Telford Oxendine (Recalled), testified, without objection:

"That Carl James Ball was also charged in the safe-cracking for which Telford is now in prison."

Sergeant Frye (Recalled):

"Sgt. Frye was recalled to the stand and asked by the solicitor whether the sheriff's department in Cumberland County was holding Carl James Ball to return him to Robeson County after this case is closed.

"Objection by defense counsel. Sustained."

[6] Ordering a mistrial is a matter of discretion. *State v. Brown*, 266 N.C. 55, 145 S.E. 2d 297; *State v. Humbles*, 241 N.C. 47, 84 S.E. 2d 264; *State v. Dove*, 222 N.C. 162, 22 S.E. 2d 231; *State v. Guice*, 201 N.C. 761, 161 S.E. 533. The judge's action is not reviewable unless there are circumstances establishing gross abuse. *State v. Humbles, supra; State v. Guice, supra; State v. Andrews*, 166 N.C. 349, 81 S.E. 416. No such abuse appears here. There was no objection to Oxendine's testimony, and the objection to Frye's testimony was sustained.

Justice Lake, in *State v. Williams*, 274 N.C. 328, 334, 163 S.E. 2d 353, 357, states:

"Nothing else appearing, the admission of incompetent evidence is not ground for a new trial where there was no objection at the time the evidence was offered. *State v. McKethan*, 269 N.C. 81, 152 S.E. 2d 341; *State v. Camp*, 266 N.C. 626, 146 S.E. 2d 643; *Lambros v. Zrakas*, 234 N.C. 287, 66 S.E. 2d 895; *State v. Fuqua*, 234 N.C. 168, 66 S.E. 2d 667; *State v. Hunt*, 223 N.C. 173, 25 S.E. 2d 598; Stansbury, North Carolina Evidence, 2d Ed., § 27; Wigmore on Evidence, 3d Ed., § 18."

[5] The defendant contends, however, that this case is controlled by *State v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762. There is no merit to this contention. In *Phillips* the solicitor asked defense witnesses a long series of questions which assumed facts not in evidence or misrepresented facts actually in evidence, or which were argumentative and called for answers which were objectionable. This Court allowed a new trial in *Phillips*, stating that the solicitor, by asking insinuating questions, was seeking to place before the jury incompetent and prejudicial matter not legally admissible. In the present case, the answer to only one question, without objection to that question or without motion to strike the answer, and the asking of one question to Sergeant Frye, to which objection was sustained, presents a factual situation entirely different from *Phillips*.

In the two assignments brought forward by the defendant, we find no error.

No error.