STATE OF NORTH CAROLINA v. AUGUSTUS L. BERRY

No. 7118SC735

(Filed 29 December 1971)

1. Assault and Battery § 5— assault on police officer with firearm — sufficiency of evidence

The State's evidence was sufficient for the jury in this prosecution for assaulting a police officer with a firearm in violation of G.S. 14-34.2 where it tended to show that a shot fired from a hotel struck the patrol car the officer was driving, that a rifle owned by defendant was found in a closet just outside a room rented by defendant in the hotel, and that a bullet found in the patrol car had been fired from defendant's rifle.

2. Constitutional Law § 30— speedy trial

Defendant was not denied his constitutional right to a speedy trial by a delay of some 17 months between his arrest and trial, the State having been granted four continuances during that time, where the record reveals legitimate and reasonable excuses for the delay, and defendant has failed to show that the delay was due to the neglect or wilfulness of the State or that he was prejudiced thereby.

APPEAL by defendant, Augustus L. Berry, from *McConnell, Judge,* 31 May 1971 Session of Superior Court held in GUILFORD County.

The defendant, along with Edward Michael Smith, Bradford Belcher and Harry Fontleroy, was charged in a single two-count bill of indictment with conspiracy to assault a law-enforcement officer, and with assaulting a law-enforcement officer with a firearm, in violation of G.S. 14-34.2. The defendant, Augustus L. Berry, was tried alone on the two counts in the bill of indictment. Upon the defendant's plea of not guilty, the State offered evidence which is reviewed in the opinion. The defendant offered no evidence. The jury found the defendant guilty of both counts in the bill of indictment.

On 11 June 1971 the trial judge continued prayer for judgment until 6 September 1971 on the count in the bill of indictment wherein the defendant was charged with conspiracy to assault a law-enforcement officer.

From a judgment on the verdict imposing a prison sentence in the count in the bill of indictment charging the defendant with assault on a law-enforcement officer with a firearm, the defendant appealed to this Court.

*Attorney General Robert Morgan and Associate Attorney Ronald M. Price for the State.*

*Smith and Patterson by Norman B. Smith, Michael K. Curtis and J. David James for defendant appellant.*

HEDRICK, Judge.

[1]   The defendant urges as error the court's denial of his motion for judgment as of nonsuit. In the second count charging the defendant with assaulting an officer with a firearm, the State offered evidence (except where quoted) tending to show the following: On 12 December 1969, at about 12:45 a.m., Ralph Tucker, an Officer with the Patrol Division of the Greensboro Police Department, was on duty patrolling the Greensboro City streets in a patrol car. As the officer drove the patrol car west along Friendly Avenue approaching Davie Street, he "heard something that sounded like a gunshot or firecracker." When the officer heard the noise the driver's side of the automobile was facing the north side of the King Cotton Hotel. As the officer proceeded to drive the automobile along the street, he heard another shot which he said he believed came from the middle of the King Cotton "on up toward the left side." The second shot hit the glass in the rear door of the car on the driver's side. Officer Tucker found a bullet in the automobile. According to Officer Tucker's testimony, about half or more of the King Cotton Hotel and between 72 and 84 of its windows were visible from where he was when the shot was fired. Forty-five minutes after Officer Tucker reported the shooting incident and the damage to the patrol car, police officers went to the fourteenth floor of the King Cotton Hotel where they heard boisterous laughter emanating from room 1404. When someone opened the door from inside the room, the officers entered and learned that the room was being rented by the defendant. One of the police officers testified that from a window in the defendant's room he could look straight into Friendly Avenue at the Daily News Building. When the officers asked the defendant for permission to search his room, the codefendant Edward Michael Smith, who was not tried with the defendant Berry, asked the officers if they had a search warrant. The officers again asked the defendant Berry if they might search his room, and the defendant Smith again asked if they had a warrant. The officers then explained that since the defendant Berry

rented the room, they were asking him for permission to search; whereupon, the defendant Berry asked the officers what they were looking for. When the officers explained that they were looking for a rifle, the defendant Berry told them that he did not have a gun and that they could search his room. The officers did not find a gun in the defendant's room; however, one of the officers found a loaded .22 rifle in a small service closet in the hall just outside the door to the defendant's room which the officers took to the police station without the defendant's knowledge.

At 2:30 p.m., on 12 December 1969, the defendant Berry and Harry Fontleroy, a codefendant not tried with the defendant Berry, went to the Greensboro Police Station where they talked to Major Edmond Robert Wynn, Commanding Officer of the Patrol Division of the Greensboro Police Department. Major Wynn testified: "They identified themselves as Augustus Berry—and said he lived at 1404 King Cotton Hotel. And the other person said he was Harry Fontleroy and he resided at A & T and both were A & T students. . . . At this time I asked him what his complaint was. And he said, 'Well, they took my gun.'

\* \* \*

"At that time I asked Mr. Berry if he would describe the gun. And he described it as being a rifle, a Marlin .39A. He said it had rust spots on it and chipped butt plate, that is, at the end of the rifle. And he mentioned that there was something wrong with the right front sight. And he also mentioned that it was a lever action type gun.

"He asked if we had the gun and could he have it back, and I asked him, 'Why,' and he stated that it was his gun. I told him that this gun was being held and would be processed and ultimately we would make some decision on it.

\* \* \*

" . . . I asked him later on why he was making a complaint —why he had come up here, he said he wanted to help with matters, and I asked him, 'Along what line,' and he said he wanted to get the matter straightened out. I then asked him if the officers talked to him about the gun the night before, and he said, 'Yes, they did.' And I asked, 'What did you tell them about that.' And he said, 'I lied.' And I asked, 'About what,' and he said, 'I lied about the fact I did not have a gun.'

"As to whether he explained why he had lied to the officers the night before about the gun, he said he was mad; that he was mad about the fact that they had come to his room; that he was mad about the fact they had come into his room, and also mad about the fact that one of the officers had a shotgun.

*  *  *

"As to whether at that point, there was any conversation about the other persons in the room at the time the officers came there, Fontleroy said he was the second party and they had been in the room during the entire evening. . . . "

A Federal Bureau of Investigation ballistics expert testified that he test fired the Marlin .22 rifle taken from the closet outside the defendant's door in the King Cotton Hotel and compared the test bullet with the bullet found by Officer Tucker in the patrol car, and in his opinion the projectile found by Officer Tucker in the automobile was fired from the Marlin rifle claimed by the defendant.

When the foregoing evidence is considered in the light most favorable to the State, we think it is sufficient to require the submission of the case to the jury on the count in the bill of indictment charging the defendant with assaulting a police officer with a firearm. The defendant's motion for judgment as of nonsuit was properly denied.

The defendant contends the court committed prejudicial error in its instructions to the jury on the count charging an assault with a firearm on a police officer. When the entire charge of the court is considered contextually, we find it correct and free from prejudicial error.

[2]   Defendant contends he was denied his constitutional right to a speedy trial. With respect to this contention, the record, in pertinent part, is as follows:

"MR. SMITH: If your Honor please, the warrant in this action was issued on December 12, 1969, I believe. The defendant was apprehended in February of 1970, and he was held for fifty-three days in jail before being released on bond. He was under a very high bond, a bond that he couldn't make. And then the bond was lowered to a bond that he could make.

He was from Washington, D. C., and he has come from Washington for each of these trials. They were scheduled February 23, 1970; December 9, 1970; February 24, 1971; April 15, 1971, and then again at the present session.

In each instance the State has requested a continuance. Never has the defendant requested a continuance. . . . And the continuances of this prosecution have been a bar and impediment to him in his normal life. And I think . . . that the prosecution ought to be dismissed on the grounds of the Sixth Amendment, a right to a speedy trial.

\* \* \*

Mr. Albright: . . . .

The first time it was continued his client was in jail. And you, Mr. Smith, were advised of our intention to submit indictments for three other defendants, who are now jointly indicted. And we didn't oppose bond reduction. That was March, 1970, Term, other defendants were indicted.

On at least two other occasions, I have had an F.B.I. agent physically incapacitated. . . .

\* \* \*

Mr. Smith: . . . .

On the other hand, I agreed with you that I would permit Mr. Poppleton's report in, if necessary.

Mr. Albright: On the ballistics information, I would prefer to have his live testimony.

. . . But I know in November and April the reasons for the State not calling the case was the physical handicap of Mr. Poppleton."

In *State v. Ball*, 277 N.C. 714, 178 S.E. 2d 377 (1971), Justice Moore, speaking for the North Carolina Supreme Court, said:

" . . . The circumstances of each particular case determines whether a speedy trial has been afforded. Undue delay cannot be defined in terms of days, months, or even years. The length of the delay, the cause of the delay, prejudice to the defendant, and waiver by the defendant are interrelated factors to be considered in determining whether a trial has been unduly delayed. The burden is on the accused who

asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution."

In the present case, the defendant has failed to show that the delay in bringing him to trial was due to the neglect or willfulness of the State, or that he was in any way prejudiced by the delay. The record reveals legitimate and reasonable excuses for any delay in bringing this defendant to trial. The defendant's motion to dismiss was properly denied. See *State v. Cavallaro*, 274 N.C. 480, 164 S.E. 2d 168 (1968); *State v. Neas*, 278 N.C. 506, 180 S.E. 2d 12 (1971); *State v. Wrenn*, 12 N.C. App. 146, 182 S.E. 2d 600 (1971).

We have carefully reviewed all of the defendant's assignments of error relating to the charge of assaulting an officer with a firearm, and we conclude that the defendant had a fair trial free from prejudicial error.

No error.

Chief Judge MALLARD and Judge GRAHAM concur.