STATE OF NORTH CAROLINA v. EUGENE BROWN

No. 20

(Filed 11 October 1972)

1. Constitutional Law § 30— speedy trial — reasonableness of delay

The length of the delay, the cause of the delay, prejudice to the defendant, and waiver by defendant are interrelated factors to be considered in determining whether a trial has been unduly delayed.

2. Constitutional Law § 30— speedy trial — 17 months between offense and trial

Defendant in a murder prosecution was not denied his right to a speedy trial where seventeen months elapsed between the offense and the trial, where no substantial actual prejudice to defendant appeared in the record, where the delay resulted from a congested docket, a lack of judges for special sessions, and an attempt to give priority to jail cases, and where defendant agreed to a continuance as late as four and a half months prior to trial.

3. Constitutional Law § 30— speedy trial — length of delay alone

Length of delay in absolute terms is never *per se* determinative on the issue of denial of a defendant's right to a speedy trial.

4. Constitutional Law § 30— speedy trial — court congestion a justification for delay

Congestion of criminal court dockets has consistently been recognized as a valid justification for delay between commission of an offense and trial.

**5. Constitutional Law § 30— speedy trial — burden of proof**

Defendant failed to carry his burden of showing that delay in trying his case was due to the neglect or willfulness of the prosecution where the record showed that there was a backlog of approximately 1000 criminal cases on the docket, that 125 jail cases had priority over defendant's case, and that despite the congestion the trial took place eight months after the solicitor prosecuting the case took office.

APPEAL by defendant from decision of the North Carolina Court of Appeals affirming the judgment of *Fountain, J.,* at the 30 August 1971 Session of MECKLENBURG Superior Court, reported in 14 N.C. App. 570, 188 S.E. 2d 765 (1972).

Defendant was charged in a bill of indictment returned at the 11 May 1970 Session of Mecklenburg Superior Court with the first degree murder of his wife, Dorothy Brown, on 22 March 1970.

The evidence favorable to the State tends to show: Defendant resided at 4016 Crestridge Drive with his wife, his wife's nephew and mother, and his stepson. The deceased, defendant's wife, went to bed about 9 p.m. on the evening of 22 March 1970. About midnight defendant went into his wife's bedroom with a pistol. He held the gun on her and as she stood up in the bed with her hands up, he shot her. The deceased ran into the hallway adjacent to the bedroom where the defendant shot at her again. She died as a result of a gunshot wound inflicted on this occasion. After shooting his wife, the defendant threatened his wife's mother and his stepson with the gun, but did not harm them. Immediately thereafter the defendant left the house and caught a taxi downtown where he was arrested by the police. When arrested defendant had a 22-caliber German-make revolver in his pocket, containing three live cartridges and two spent cartridges.

The evidence of the defendant tended to establish self-defense. He testified that while he was sitting on the bed taking off his shoes, his wife attacked him with her fists and began shouting at him. Her mother came into the room with a butcher knife and only then did he take his gun from under the mattress. He went out into the hallway and his wife, who had previously left the bedroom, approached him with a raised knife in her hand. Defendant contends that he shot her at that moment out of fear for his life.

At the close of all the evidence defendant's motion to dismiss as to the charge of murder in the first degree was allowed. The case was submitted to the jury on the charge of second degree murder or manslaughter. The jury returned a verdict of guilty of manslaughter, and from sentence imposed defendant appealed to the Court of Appeals. That court found no error, and defendant appealed to this Court pursuant to G.S. 7A-30(1).

*Attorney General Robert Morgan by Assistant Attorney General Mrs. Christine Y. Denson for the State.*

*Paul L. Whitfield for defendant appellant.*

MOORE, Justice.

The sole question presented by this appeal is whether defendant was denied a speedy trial and due process of law as guaranteed him under the Constitutions of the State of North Carolina and of the United States.

The facts pertinent to this question are: Three arrest warrants were issued for defendant Eugene Brown, each charging him with the first degree murder of Dorothy Brown, his wife, on 22 March 1970. The defendant was arrested and placed in jail on 22 March 1970. Two of these warrants were issued on 22 March 1970 and were later *nolle prossed* apparently because of a defect pointed out by defendant's attorney. The third warrant was issued on 10 April 1970. Defendant waived a preliminary hearing on this warrant and was bound over to Superior Court on 17 April 1970. From the time of his arrest defendant remained in jail for approximately 27 days and then was released under a $5,000 appearance bond. On 11 May 1970 the grand jury of Mecklenburg County returned an indictment charging defendant with the first degree murder of his wife.

On 10 April 1970 Paul Whitfield was employed by defendant as privately retained counsel. The law firm of Plumides and Plumides was employed by the family of the deceased as private prosecutor. During the summer of 1970 defendant's attorney met with an associate of Plumides and Plumides and discussed a possible date for the trial of this case. Defendant's attorney indicated that he was not anxious for the case to be calendared for trial since he had not yet received his full fee. The case was first calendared for trial on 21 September 1970.

At the request of defendant's attorney, the case was continued at that term due to the fact that defendant's attorney was appearing in another case in a different court.

On 1 January 1971 Thomas F. Moore replaced the former solicitor in the Mecklenburg Solicitorial District. At that time there were approximately 850 to 1,000 criminal cases pending in the District. On the average a number in excess of 125 were in jail awaiting trial. For this reason the solicitor adopted a conscious policy of giving priority to cases in which the defendants were in jail.

During 1971 this case was calendared for trial four times without being tried, the first time being 24 February 1971. The case was continued at that time on a Thursday due to the determination by the solicitor's office that there was not sufficient time to complete the case that week. The second continuance was granted on 19 April 1971. At that time the law firm of Plumides and Plumides withdrew as private prosecutor, and the presiding judge entered an order which stated in part: "Let the record show . . . that defendant's counsel was agreeable that the case be continued and other private prosecution be employed, if it was so desired." This order reset the case for trial during the week of 17 May 1971. However, the case was not calendared for that week because the assistant solicitor felt that it would "be more expeditious to dispose of the jail cases prior to getting into a trial that appeared to require so much time." The case was calendared for trial 23 June 1971 but was again continued because of the backlog of jail cases.

On 19 April 1971 defendant filed a motion entitled "Plea in Abatement and Motion to Quash," alleging that 13 months had passed without a trial since the date of the alleged offense and that this constituted a denial of his constitutional rights to a fair and speedy trial. On 17 August 1971, at a full evidentiary hearing on the 19 April 1971 motion before Judge McLean, Solicitor Moore testified:

" . . . The most pressing priority is putting on cases in which the defendant is in jail, move the jail cases as speedily as possible.

"After that would come the other crimes that are pending. That is the most priority. I have been handicapped in recent months due to shortage of Judges for trial

State v. Brown

sessions in Mecklenburg County. For instance, this week in which this term now, I have asked for two Judges and could get only one for this term. This will be the case next week. This difficulty is obtained for all the eight months, shortage of judges and shortage of solicitorial help."

Mr. Gilchrist, the assistant solicitor, testified as to why this case had not been tried:

" . . . The reason has been crowded docket and we knew, or anticipated this case would take some two or three days. In view of the jail cases that we have been scheduling almost every single date, I thought that priority should take place where a three day case should not take place over men in jail. For that reason when it has come up on the trial calendar it has been continued due to attempts to dispose of the cases in jail first.

\*     \*     \*

" . . . We have attempted to put more jail cases on the docket than we could dispose of in an effort to take care of the jail cases first, should there be any breakdown in the trial calendar. We have had enough cases in the jail alone to more than cover the time on the dates for trial."

After hearing the evidence, Judge McLean found the facts substantially as set out above and entered an order denying the motion as follows:

" . . . (T)hat the defendant was admitted to bail in April of 1970 and has been on bail since that time and is presently on bail; that the matter has been placed on the calendar for trial some four times but has not been tried due to other cases of those confined in jail being tried first; that the witnesses for the defendant are all present in court today; that the defendant has suffered no loss in having his witnesses present to present his defense; that the solicitor has been diligent in attempting to bring this matter to trial.

"Upon the foregoing, the Court concludes that the State has been diligent, has not unduly delayed this case for trial; that the motion of the defendant to quash and dismiss the action is denied. The defendant excepts.

"This the 17th day of August, 1971."

State v. Brown

The findings of fact made by Judge McLean are fully supported by competent evidence in the record, and these findings support the conclusions of law.

The case was set for trial on 30 August 1971 and the defendant again filed a "Motion to Dismiss" for the reason that the State had not acted with reasonable diligence in providing defendant with a speedy trial. Based on the findings of fact made by Judge McLean in his order of 17 August 1971, Judge Fountain, Judge Presiding at the 30 August 1971 Session, overruled defendant's motion after defendant's counsel stated that the "status and condition of the defendant as relates to his trial is the same today as it was on August 17, 1971, the date of Judge McLean's order." Defendant was then arraigned and the trial proceeded.

Defendant did not allege in the "Plea in Abatement and Motion to Quash" filed 19 April 1971 or in the "Motion to Dismiss" filed 30 August 1971 that he had been prejudiced by the delay in any manner except that furniture and other household goods belonging to defendant were converted to the use of other members of his household while defendant was incarcerated in the common jail of Mecklenburg County for 27 days without privilege of bond, and that the State had not acted with reasonable diligence in providing defendant with a speedy trial. At the hearing before Judge McLean on 17 August 1971 defendant's attorney, Mr. Whitfield, testified: "My witnesses are here and available for trial and have been three or four times, and these are the same witnesses that I would have had all along and I have not lost any witnesses as a result of the delay." Defendant's counsel stated that the same conditions existed on 30 August 1971 when the case was called for trial.

Defendant was charged with first degree murder, and the State's evidence, if believed, would have sustained that charge. Defendant could have been held without bond pending his trial or until bond was set by a Justice or a Judge of the General Court of Justice. G. S. 15-102 (1). Bond was set and defendant was released on bail within 27 days from the date of his arrest and remained on bail until his trial. Defendant does not contend that his rights so far as his trial was concerned were in any way prejudiced by the delay in allowing bail. The real question is whether the lapse of time from his arrest on 22 March 1970 until his trial on 30 August 1971, some 17 months later, was

such as to deprive the defendant of his right to a speedy trial as guaranteed by both the Constitution of the United States and the Constitution of the State of North Carolina.

[1] The word "speedy" cannot be defined in specific terms of days, months or years, so the question whether a defendant has been denied a speedy trial must be answered in light of the facts in the particular case. The length of the delay, the cause of the delay, prejudice to the defendant, and waiver by defendant are interrelated factors to be considered in determining whether a trial has been unduly delayed. *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972) ; *State v. Harrell,* 281 N.C. 111, 187 S.E. 2d 789 (1972) ; *State v. Ball,* 277 N.C. 714, 178 S.E. 2d 377 (1972) ; *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970) ; *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969) ; *State v. Cavallaro,* 274 N.C. 480, 164 S.E. 2d 168 (1968) ; *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965). See *Pollard v. United States,* 352 U.S. 354, 1 L.Ed. 2d 393, 77 S.Ct. 481 (1957) ; *Beavers v. Haubert,* 198 U.S. 77, 49 L.Ed. 950, 25 S.Ct. 573 (1905).

[2] Defendant contends that under *Dickey v. Florida,* 398 U.S. 30, 26 L.Ed. 2d 26, 90 S.Ct. 1564 (1970), he is entitled to his discharge. In *Dickey* petitioner was in Federal custody. The State of Florida issued a warrant for him on a State criminal charge. Over a period of seven years while still in Federal custody and available to the State of Florida, petitioner made repeated but unsuccessful efforts to secure a trial in the State court. In the interim between arrest and trial, two witnesses died, another potential defense witness allegedly became unavailable, and police records which might have been relevant were lost. The Supreme Court held that petitioner had been deprived of his right to a speedy trial and that the State charge should be dismissed. *Dickey* is distinguishable from the present case in four significant respects: (1) The length of delay was six years longer in *Dickey.* (2) Substantial actual prejudice to the defendant appeared in the record in *Dickey* but none was shown in this case. (3) No valid reason for the delay existed in *Dickey.* The delay in this case resulted from a congested docket, a lack of judges for special sessions, and an attempt to give priority to jail cases. (4) The defendant in *Dickey* did nothing which could be construed as a waiver. The defendant in this case agreed to a continuance as late as four and a half months prior to trial.

[3]  While the length of delay in absolute terms is never *per se* determinative, admittedly a delay of 17 months, as in this case, could contravene the right to a speedy trial under some circumstances, and such delay should be avoided if possible. The proscription in cases of this kind, however, is against purposeful or oppressive delays and delays which the prosecution could have avoided by reasonable effort. *Pollard v. United States, supra; State v. Spencer, supra; State v. Johnson, supra.*

[4]  The congestion of criminal court dockets has consistently been recognized as a valid justification for delay. Both crowded dockets and lack of judges or lawyers, and other factors, make some delays inevitable. *Dickey v. Florida, supra.* In *State v. George,* 271 N.C. 438, 156 S.E. 2d 845 (1967), Justice Pless said:

> " . . . (W)e must also recognize that in both Mecklenburg and Gaston Counties the criminal dockets are congested, and that regardless of the efforts of the judge and the solicitor, it is impossible to grant every defendant an immediate trial."

Also, Justice Sharp stated in *State v. Hollars, supra:*

> "We do not approve a delay of two years in trying any defendant's case. We must note, however, that the ever increasing number of criminal cases is putting a heavy strain upon speedy trial. . . . The combination of circumstances here . . . the congested condition of the docket, plus the fact that a retrial could not have resulted in defendant's immediate release from prison—negate any wilful failure on the part of court officials to give defendant a speedy trial."

[5]  When Solicitor Moore took office on 1 January 1971, he had a backlog of some 1,000 criminal cases on the docket, including about 125 cases in which the defendants were confined in jail awaiting trial. Under these circumstances, a delay from 1 January 1971 to 30 August 1971 could hardly be considered "willful or oppressive." *Pollard v. United States, supra.* The burden is clearly on the accused who asserts the denial of his right to a speedy trial to show that the delay is due to the neglect or willfulness of the prosecution. *State v. Ball, supra; State v. Hatcher, supra; State v. Johnson, supra; State v. Hollars, supra.* Defendant has failed to carry that burden.

In the present case defendant's counsel stated in the summer of 1970 that he was in no hurry to bring the case to trial; he asked for a continuance in September 1970 and was agreeable to a continuance as late as April 1971. "A defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice." *State v. Johnson, supra.*

This case also reveals a record devoid of any evidence of prejudice. All of defendant's witnesses were available for the trial, and defendant neither alleged nor offered proof of actual prejudice. Nothing in the record suggests that his ability to present his defense was in any way impaired by the delay.

Defendant's contention that he has been denied his right to a speedy trial is without merit. The delay of 17 months under the circumstances in this case was not prohibitively long. The reason for the delay was valid. No actual prejudice has been shown, and there is substantial evidence of waiver in the record. For these reasons, the decision of the Court of Appeals is affirmed.

Affirmed.