STATE OF NORTH CAROLINA v. RONALD F. JACKSON

No. 80

(Filed 6 June 1975)

1. **Constitutional Law § 30; Criminal Law § 177— speedy retrial after appeal**

In enacting G.S. 15-186 providing that "In criminal cases where the judgment is not affirmed the cases shall be placed upon the docket for trial at the first ensuing criminal session of court after the receipt of" the certificate of the appellate division, the General Assembly did not intend to give defendants on retrial a right to a more speedy trial than that guaranteed to all by the U. S. Constitution and the N. C. Constitution; whether a defendant has been denied his right to a speedy retrial must be determined in light of the facts of a particular case by the application of the same principles applied by the courts in determining whether a defendant has been denied his right to a speedy trial.

2. **Constitutional Law § 30; Criminal Law § 177— delay between appellate decision and retrial**

A delay of seven months from the time the decision of the Court of Appeals was filed on defendant's first appeal to the date of his second trial did not violate his statutory right to a speedy trial under G.S. 15-186 where the delay largely resulted from a congested docket and from an attempt to give priority to jail cases, and defendant made no motion for a speedy retrial until two months before the retrial.

3. **Criminal Law § 15— pretrial publicity — local prejudice — motion for change of venue**

The trial court in an armed robbery case did not abuse its discretion in the denial of defendant's motion for a change of venue from Union County or for a special venire on the ground of newspaper publicity where articles in a Monroe newspaper were factual and not inflammatory, and articles in two Charlotte newspapers were largely favorable to defendant; nor did the court err in the denial of such motion on the ground that defendant could not receive a fair trial in Union County because newspaper articles about the case were critical of the district attorney, sheriff, and a local attorney. G.S. 1-84; G.S. 9-12.

4. **Criminal Law § 66— in-court identifications — suggestive pretrial photographic lineup — courtroom showing of defendant**

In this armed robbery case, the in-court identifications of defendant by the two victims were not tainted and rendered incompetent by a suggestive pretrial photographic lineup wherein defendant's photograph appeared two times while the photographs of others appeared but once, or by a showing of defendant to one witness in a courtroom where defendant was on trial on another charge, where both witnesses carefully observed defendant's uncovered face during the robbery for five minutes from a distance of a few feet in a well-lighted room during midday, both witnesses selected defendant from

State v. Jackson

the photographic lineup, and the trial judge found upon the *voir dire* testimony that their in-court identifications were based on what they saw on the day of the crime.

5. Criminal Law § 62— polygraph test results

The trial court properly refused to allow the results of a polygraph test into evidence.

6. Constitutional Law § 31; Criminal Law § 73; Indictment and Warrant § 6— complaint for arrest — hearsay

The trial court in a prosecution for first degree murder committed prejudicial error in the admission of the complaint for arrest executed by a police officer who did not testify at trial since the State was thereby permitted to strengthen its case with clearly incompetent hearsay evidence by a person who was not subject to cross-examination.

Justice COPELAND did not participate in the hearing or decision of this case.

APPEAL pursuant to G.S. 7A-30(2) to review the decision of the North Carolina Court of Appeals, reported in 24 N.C. App. 394, 210 S.E. 2d 876 (1975), which found no error in proceedings before *Copeland, S.J.*, at the 15 April 1974 Session of UNION Superior Court, and Seay, J., at the 6 May 1974 Session of Union Superior Court.

On indictment proper in form, defendant was charged with armed robbery in violation of G.S. 14-87. He was first convicted of the present offense before Chess, J., at the 12 March 1973 Special Criminal Session of Union Superior Court. Upon appeal to the Court of Appeals, that court awarded a new trial for the reasons stated in the opinion reported in 19 N.C. App. 370, 199 S.E. 2d 32 (1973).

At retrial, upon a plea of not guilty, defendant was again convicted of armed robbery and was sentenced to ten to fifteen years' imprisonment.

The State's evidence tends to show that at about 3:20 p.m. on 30 January 1973, Bill Squires was operating his grocery store-service station business in Union County when defendant and another man entered. Defendant aimed a handgun at Squires and said, "Give me your money." The man accompanying defendant then took approximately three hundred to four hundred dollars from the cash register. Defendant also took at gun point approximately thirty dollars from the person of Larry Catledge, a salesman who was making a visit to Squires's business at the time. Defendant and his accomplice then left in a green

Chevrolet truck with South Carolina license plates. Both Squires and Catledge identified defendant at trial as one of the robbers.

Defendant testified that in January 1973 he owned a green Chevrolet truck with South Carolina license tags. He further testified that he was repairing another truck in Bennettsville, South Carolina, on the date and at the time in question. He denied being in North Carolina on that date or participating in the robbery. Three acquaintances, defendant's mother, and his brother also testified that defendant was in Bennettsville—approximately ninety miles from the scene of the crime—at pertinent times during the afternoon of 30 January 1973.

Other facts necessary for decision are set out in the opinion.

*Attorney General Rufus L. Edmisten and Assistant Attorney General James E. Magner, Jr. for the State.*

*David R. Badger for defendant appellant.*

MOORE, Justice.

By his first assignment of error defendant contends that his statutory and constitutional rights to a speedy trial were violated.

Defendant was first tried and convicted before Chess, J., and a jury, at the 12 March 1973 Special Criminal Session of Union Superior Court, and from sentence imposed appealed to the Court of Appeals. That court, in an opinion certified 24 September 1973, awarded defendant a new trial. 19 N.C. App. 370, 199 S.E. 2d 32 (1973). Thereafter, pretrial motions were heard before Copeland, J., at the 15 April 1974 Special Criminal Session of Union Superior Court and defendant was again tried before Seay, J., at the 6 May 1974 Criminal Session of Union Superior Court.

[2]  Defendant contends that a delay of some seven months from the time the decision of the Court of Appeals was filed on his first appeal to the date of the second trial violated his statutory right to a speedy trial under G.S. 15-186 which, in pertinent part, provides:

> *"Procedure upon receipt of certificate of appellate division.—* . . . In criminal cases where the judgment is not affirmed the cases shall be placed upon the docket for

State v. Jackson

trial at the first ensuing criminal session of the court after the receipt of such certificate."

[1]   The Court of Appeals held that this statute was not mandatory but was a directive to the clerk of the superior court regarding steps to be taken when the appellate division orders a new trial.

Defendant's counsel in his brief states:

"The defendant is in accord with the holding of the North Carolina Court of Appeals that literal compliance with North Carolina General Statutes Section 15-186 is not necessary where extraordinary circumstances exist and that whether there is good cause in delay of scheduling a case for retrial must be answered in light of the facts in a particular case. . . . Although many of the same principles applied by appellate courts in deciding whether a defendant has been denied his right to a speedy trial should be applied in determining whether there is good cause for delay in the scheduling of a case for retrial pursuant to North Carolina General Statutes Section 15-186, the defendant respectfully contends that the cited statute reflects the legislative intent to substitute an objective standard in lieu of the somewhat subjective standard utilized by appellate courts in their discussions of speedy trial questions based solely upon constitutional consideration. . . . "

The Court of Appeals, after a good examination of authorities from other states, concluded:

"Whether there is good cause for delay in the scheduling of a case for retrial and whether the defendant has been denied his constitutional right to a speedy retrial must be answered in light of the facts in a particular case. In answering these questions the same principles applied by our courts in deciding whether a defendant has been denied his right to a speedy trial should be applied."

We agree. We do not believe that the General Assembly by G.S. 15-186 intended to give defendants on retrial right to a more speedy trial than that guaranteed to all by the Constitution of the United States and the Constitution of North Carolina.

In *State v. Brown*, 282 N.C. 117, 123, 191 S.E. 2d 659, 663 (1972), with reference to the constitutional right to a speedy trial, we said:

"The word 'speedy' cannot be defined in specific terms of days, months or years, so the question whether a defendant has been denied a speedy trial must be answered in light of the facts in the particular case. The length of the delay, the cause of the delay, prejudice to the defendant, and waiver by defendant are interrelated factors to be considered in determining whether a trial has been unduly delayed. *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972); *State v. Harrell*, 281 N.C. 111, 187 S.E. 2d 789 (1972); *State v. Ball*, 277 N.C. 714, 178 S.E. 2d 377 (1971); *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970); *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969); *State v. Cavallaro*, 274 N.C. 480, 164 S.E. 2d 168 (1968); *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309 (1965). See *Pollard v. United States*, 352 U.S. 354, 1 L.Ed. 2d 393, 77 S.Ct. 481 (1957); *Beavers v. Haubert*, 198 U.S. 77, 49 L.Ed. 950, 25 S.Ct. 573 (1905)."

*Accord, State v. Hill*, 287 N.C. 207, 214 S.E. 2d 67 (1975); *State v. Gordon*, 287 N.C. 118, 213 S.E. 2d 708 (1975).

In the present case Judge Copeland heard evidence from both the State and defendant on a motion to dismiss for failure to give defendant a speedy trial and made findings of fact substantially as follows:

1. The decision of the Court of Appeals was certified to the Union County Superior Court 24 September 1973.

2. The defendant has been out on bond since August 1973.

3. Neither defendant nor his counsel made any motion for a speedy trial orally until about two months prior to this hearing. A written motion for a speedy trial was filed on 8 March 1974.

4. A large number of criminal cases were pending, many including defendants in jail, and as many of these cases as possible had been disposed of since 24 September 1973, a substantial number of which involved defendants in jail awaiting trial.

Judge Copeland then concluded:

> "As a Matter of Law . . . under the circumstances, the District Attorney has proceeded as rapidly as he could with these cases, considering the other cases that he had to try in this county and in this district.

> "The Court Also Concludes as a Matter of Law that no prejudice resulted to the defendant in this connection."

[2] As found by the trial court, the delay in this case largely resulted from the congested docket and from an attempt to give priority to jail cases. The congestion of criminal court dockets has consistently been recognized as a valid justification for delay. *Dickey v. Florida,* 398 U.S. 30, 26 L.Ed. 2d 26, 90 S.Ct. 1564 (1970); *State v. Gordon, supra; State v. Brown, supra; State v. George,* 271 N.C. 438, 156 S.E. 2d 845 (1967); *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965). The burden is clearly on the accused who asserts the denial of his right to a speedy trial to show that the delay is due to the neglect or willfulness of the prosecution. *State v. Brown, supra; State v. Ball,* 277 N.C. 714, 178 S.E. 2d 377 (1971); *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970); *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969); *State v. Hollars, supra.* Defendant has failed to carry that burden.

In the present case no motion for a speedy trial was made prior to 8 March 1974, and on 18 April 1974, when Judge Copeland heard the motion, counsel for defendant stated that he was not prepared to try the case at that time for the reason that there were witnesses from out of state. "A defendant who has himself caused the delay, or *acquiesced* in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice. [Citations omitted.]" (Emphasis added.) *State v. Johnson, supra.* Defendant's contention that he has been denied his right to a speedy trial is without merit.

[3] Pursuant to the provisions of G.S. 1-84 and G.S. 9-12, defendant filed a pretrial motion for a change of venue from Union County or, in the alternative, for a special venire for the retrial of his case. Defendant contends that the trial court abused its discretion in denying this motion for the reason that newspaper articles published prior to the trial made it impossible for him to obtain a fair trial in Union County. In

State v. Jackson

support of this motion, defendant offered petition verified by his attorney, and various newspaper clippings.

The newspaper articles in the Monroe Enquirer-Journal were factual and not inflammatory. The articles in the Charlotte papers were largely favorable to defendant. For instance, headlines in large print in an article in the October 2, 1973, edition of The Charlotte Observer boldly proclaimed, "Convicted Man Telling Truth, N. C. Tests Show." This statement referred to a polygraph test given defendant during the investigation of this case, the results of which are not admissible in evidence.

The Charlotte News in bold headlines in its March 14, 1973, edition stated, "I'll Prove My Innocence, Robber Tells Union Judge." Another article in the June 22, 1973, edition of The Charlotte Observer was headlined as follows: "Agent Says N. C. Inmate Not Guilty." This article referred to a statement made by an unnamed undercover agent for South Carolina's State Law Enforcement Division and quoted Chief J. P. Strom of that Division as saying that the evidence "looks good and strongly indicates that Jackson may be innocent." It is noted that neither of these South Carolina officers testified at trial. Still another headline in the June 28, 1973, edition of The Charlotte Observer stated, "New Probe May Free Man Convicted in N. C. Robbery," and then related statements made by various witnesses regarding defendant's innocence.

The Charlotte Observer and The Charlotte News are newspapers with wide circulation in that area. Defendant offered no evidence to show that such publicity was more widespread in Union County than in any other county to which the case might have been removed under G.S. 1-84 or from which jurors could have been drawn under G.S. 9-12.

Defendant contends, however, that the primary reason for the motion was not to move the trial outside the territory served by the Charlotte newspapers but to move it out of the area within which Mr. Lowery, the District Attorney; Mr. Fowler, the Sheriff; and Mr. Funderburk, an attorney, were well known. In his motion for a change of venue or a special venire, defendant alleges that some of the published articles were critical of these three men, all of whom were well known in that area; that they were published without the fault of the defendant; and constituted probable cause to believe that a fair and impartial trial could not be obtained in Union County. No evidence was

offered to support these allegations and no evidence was offered that any prospective juror or other citizen of Union County had read or in any manner had been influenced by such articles.

A motion for a change of venue or for a special venire on the grounds of local prejudice against defendant is addressed to the sole discretion of the trial judge and an abuse of discretion must be shown before there is any error. *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974) ; *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971) ; *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457 (1968) ; *State v. Brown,* 271 N.C. 250, 156 S.E. 2d 272 (1967) ; *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967) ; *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453 (1967) ; *State v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341 (1967). There is no indication of abuse of discretion in the present case. This assignment is overruled.

[4]    Defendant next contends that the trial court erred in admitting the in-court identification testimony of State's witnesses Bill Squires and Larry Catledge. Defendant argues that the pretrial identification procedures were so unnecessarily suggestive and conducive to mistaken identification that the defendant was denied due process of law and that the in-court identification was therefore tainted by the pretrial identification procedures.

In *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974), we stated the test applicable to pretrial identification procedures as follows:

" . . . The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice. *Foster v. California,* 394 U.S. 440, 22 L.Ed. 2d 402, 89 S.Ct. 1127; *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967; *Rochin v. California,* 342 U.S. 165, 96 L.Ed. 183, 72 S.Ct. 205; *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610; *State v. Austin,* 276 N.C. 391, 172 S.E. 2d 507; *State v. Rogers* [275 N.C. 411, 168 S.E. 2d 345]."

*Accord, State v. Shore,* 285 N.C. 328, 204 S.E. 2d 682 (1974). And the United States Supreme Court has said that "each case must be considered on its own facts, and . . . convictions based

on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968). *Accord, State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975) ; *State v. Shore, supra; State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974) ; *State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634 (1971).

In the present case, the trial court, on motion of defendant, held a *voir dire* hearing on defendant's motion to suppress the identification testimony. At the *voir dire,* Bill Squires and Larry Catledge testified that they viewed defendant from the distance of a few feet for about five minutes during the robbery. They did not observe the other man very carefully because defendant was the one with the handgun. Both witnesses testified that defendant was the man who held the gun on them on 30 January 1973 and that they were basing their in-court identification on their observations at the time of the crime.

Other evidence on *voir dire* discloses that the day after the robbery Sheriff Fowler of Union County brought about six photographs for Squires to examine. There were two pictures of defendant but each of the other suspects appeared only once. Defendant and one other suspect had a mustache. Squires selected defendant's picture and said, "Sheriff, I am just about positive that this is the man." Sheriff Fowler then told Squires that defendant was scheduled to be tried that day in Wadesboro on a different charge and took Squires there. In the courtroom there were twelve to fifteen people. Squires observed defendant, who was awaiting trial, both inside the courtroom and during a recess in the concessions area. After viewing defendant, Squires said, "There's no doubt, Sheriff, that's him. I'm positive." There was conflicting evidence whether Sheriff Fowler pointed out defendant for Squires while in the courtroom.

Larry Catledge stated on *voir dire* that when he was shown an undisclosed number of photographs the evening of the day after the crime, he pointed to defendant's picture and said, "This looks like the man now, and looks like the man that did, you know, the robbery." Later, while walking by the fingerprinting room on the way from the concessions area, he looked through the open door and recognized the person being finger-

printed inside (defendant) as the man who robbed him on 30 January 1973.

After considering the evidence on *voir dire,* the trial court found, in part, that both witnesses' in-court identifications were based on their observations of defendant from the distance of several feet at the time of the crime, and that there was no impermissible suggestiveness in the photographic identifications or in the personal observations of defendant by the witnesses.

We do not approve two of the procedures utilized in this case. We refer particularly to the photographic lineup wherein defendant's photograph appeared two times while the photographs of others appeared but once and to the showing of defendant to Squires in a courtroom instead of a lineup. We are aware, however, that unnecessary suggestiveness alone does not require the exclusion of evidence. As the United States Supreme Court has said:

" . . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as [*Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967 (1967)] makes clear, the admission of evidence of a showup without more does not violate due process.

\*    \*    \*

"We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. . . . " *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972).

*Accord, State v. Burns,* 287 N.C. 102, 214 S.E. 2d 56 (1975); *State v. Shore, supra; State v. Henderson, supra.*

Here, both witnesses carefully observed defendant's uncovered face for five minutes from a distance of only a few feet. This occurred during midday in a well-lighted room. Both witnesses selected defendant from the photographic lineup. The trial judge, after hearing both witnesses on *voir dire,* found that their in-court identifications were based on what they saw on the day of the crime. We think that, considering the totality of the circumstances, the identification testimony was properly admitted in evidence. *Compare Foster v. California,* 394 U.S. 440, 22 L.Ed. 2d 402, 89 S.Ct. 1127 (1969). The trial judge's finding, based on competent evidence, is binding on appeal. *State v. Burns, supra; State v. Shore, supra; State v. Tuggle, supra.*

Defendant contends, however, that Squires's initial description to the police that defendant was "about six foot tall . . . approximately my height" should render his in-court identification tainted, since defendant was in fact only about five feet seven inches tall. We note, however, that the record shows that Squires himself is only five feet eight inches tall.

[5] By his next assignment of error defendant contends the trial court erred in refusing to allow the results of a polygraph examination into evidence.

Defendant recognizes the contrary holding of this Court in *State v. Foye,* 254 N.C. 704, 120 S.E. 2d 169 (1961). However, defendant maintains that *Foye* left open the door for future acceptance of such testimony when the reliability of lie detector test results was more clearly demonstrated. We recently rejected this argument in *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975), stating:

"Defendant urges us to reconsider our decision in *Foye* in light of technological and judicial advances since *Foye* was decided in 1961. The weight of authority still supports that decision. See Annot., 23 A.L.R. 2d 1306 (Later Case Service 1970 and Later Case Service 1975); 29 Am. Jur. 2d, Evidence § 831 (1967). We see no compelling reason to change our ruling and we adhere to our decision in *Foye* for the reasons stated therein."

This assignment is overruled.

[6] By his next assignment of error defendant contends the trial court erred in admitting into evidence the complaint for arrest and warrant for arrest.

State v. Jackson

After defendant rested his case, the State offered and the court received in evidence Exhibit No. 1, which contains the complaint for arrest and warrant for arrest. Defendant contends that these documents are hearsay and constitute a derogation of his constitutional right to confront the witnesses against him.

The affidavit of Officer Frank McGuirt, which constitutes the complaint for arrest and which is most strenuously objected to by defendant, reads as follows:

"The undersigned, Frank McGuirt, on information & belief, being duly sworn, complains and says that at and in the County named above and on or about the 30th day of Jan., 1973, the defendant named above did unlawfully, wilfully, and feloniously steal, and carry away personal property, to wit: approx. $300.00 in money, from the person and possession Bill Squires with the use of a firearm, to wit a pistol, whereby the life of Bill Squires endangered. The taking was accomplished by the commission of an assault upon Bill Squires through putting him in fear of bodily harm by threat of violence.

"The offense charged here was committed against the peace and dignity of the State and in violation of law G.S. 14-87.

Sworn to and subscribed before me this

31 day of Jan. 1973.

                                        Frank McGuirt
Kenneth Helms                              Complainant
    Magistrate                  Deputy Sheriff Union County"

We think the introduction of the complaint for arrest was error. We need only to determine if the error was prejudicial. In *State v. Spillars,* 280 N.C. 341, 185 S.E. 2d 881 (1972), we held that it was error to allow a search warrant together with the affidavit to obtain the search warrant to be introduced into evidence because the statements and allegations contained in the affidavit were hearsay statements which deprived the accused of his right to confrontation and cross-examination. *See also State v. Oakes,* 249 N.C. 282, 106 S.E. 2d 206 (1958).

*See generally* 1 Stansbury's N. C. Evidence § 139 (Brandis Rev. 1973).

In *Spillars,* the affidavit contained hearsay statements indicating defendant's complicity in another crime without showing defendant had been convicted of that crime. For that reason we said:

> "Here the evil in the admission of the search warrant and the accompanying affidavit is that the affidavit contains hearsay statements indicating defendant's complicity in another crime without showing that he had been convicted of that crime. . . . "

We further said, however:

> " . . . [T]he effect of admitting the search warrant and affidavit into evidence was to allow the State to strengthen its case by the use of obviously incompetent evidence."

In the present case, defendant's defense was an alibi. Two witnesses for the State positively identified defendant as the robber. Several witnesses for defendant testified that at the time of the robbery defendant was in Bennettsville, South Carolina—some ninety miles from the scene of the crime. The entire case for the prosecution rested upon testimony of the two eyewitnesses. It was important for the State, if possible, to corroborate the testimony of these witnesses. This the district attorney attempted to do by introducing the incompetent affidavit of Officer Frank McGuirt who did not testify and who could not therefore be cross-examined. This affidavit was not limited to the purpose of corroborating the testimony of these witnesses but was admitted into evidence without restriction. It is presumed that this affidavit, entered into evidence without restriction, was exhibited to the jury or its contents made known to them. *State v. Spillars, supra.*

We agree with the dissenting opinion of Chief Judge Brock in the Court of Appeals that "allowing the 'complaint for arrest' to be placed in evidence permitted the State to strengthen its case with clearly incompetent hearsay evidence." The admission of this affidavit was prejudicial error and entitles defendant to a new trial.

The case is remanded to the North Carolina Court of Appeals with direction that it remand it to the Superior Court

of Union County for a new trial in accordance with the principles herein stated.

New trial.

Justice COPELAND did not participate in the hearing or decision of this case.