**Ronald F. JACKSON, Appellee,**

v.

**Sam P. GARRISON, Warden, Central Prison, et al., Appellants.**

**No. 79–6631.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 22, 1980.

Decided June 23, 1981.

Joan H. Byers, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Raleigh, N. C., on brief), for appellants.

Milton M. Moore, Jr., Williamston, N. C., for appellee.

Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.

WIDENER, Circuit Judge:

Three North Carolina juries have found the petitioner, Ronald F. Jackson, guilty of robbery. The North Carolina Court of Appeals reversed Jackson's first conviction for a new trial. *State v. Jackson*, 19 N.C.App. 370, 199 S.E.2d 32 (1973). The North Carolina Supreme Court took the same action with respect to his second conviction. *State v. Jackson*, 287 N.C. 470, 215 S.E.2d 123 (1975). The North Carolina Court of Appeals upheld the third conviction. *State v. Jackson*, 30 N.C.App. 187, 226 S.E.2d 543 (1976).

The district court then granted Jackson's petition for a writ of habeas corpus.[1] It held that the State of North Carolina had "deprived [Jackson] of the constitutional right to a fair trial" because (1) the trial judge at the petitioner's second trial excluded the favorable results of a polygraph examination administered by an agent of the North Carolina Bureau of Investigation and (2) in response to Jackson's request for the subpoena of twelve out of state witnesses at state expense pursuant to North Carolina General Statutes § 15A–813, the trial court limited him to five out of state witnesses from the Bennettsville, South Carolina area. We reverse.

At the time of the petitioner's second trial in which the polygraph issue was determined adversely to Jackson, the results of polygraph examinations were inadmissible in North Carolina. E.g. *State v. Jackson*, 287 N.C. 470, 215 S.E.2d 123 (1975). North Carolina courts, however, have al-

1. Reported at 495 F.Supp. 9 (W.D.N.C.1979).

lowed the admission of the results of polygraph examinations in the trial court's discretion if both parties stipulated to the admissibility of the test. The result of the test then goes only to the credibility of the defendant, not to his guilt or innocence. *State v. Milano*, 297 N.C. 485, 256 S.E.2d 154 (1979). In our case, the prosecution did not stipulate to the admission of the results of Jackson's polygraph examinations; thus, they were inadmissible under North Carolina law. We think North Carolina's restrictions governing the admission of polygraph evidence are "matter[s] of state law and procedure not involving federal constitutional issues." *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960). The exclusion of polygraph evidence did not negate the fundamental fairness of the petitioner's trial or violate a specific constitutional right. *Grundler*, 283 F.2d at 802. See also *United States v. Webster*, 639 F.2d 174, 186 (4th Cir. 1981) (dictum), and *United States v. Oliver*, 525 F.2d 731, 736 (9th Cir. 1975), cert. den. 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976), which recognized the discretionary power of district courts to admit polygraph tests.

■ As an indigent utilizing North Carolina General Statutes § 15A–813, the petitioner sought to subpoena twelve out of state witnesses at state expense to testify at his third trial. The trial court stated that the petitioner had listed eleven out of state witnesses who were necessary to prove his alibi defense that he was in Bennettsville, South Carolina at the time of the robberies.[2] The trial court found "as a fact that all eleven witnesses would testify to substantially the same thing; . . . and that the ends of justice would be met if this court were to issue an order compelling the attendance of five witnesses from the Bennettsville, South Carolina area." The court did not state its reason for limiting the petitioner's out of state witnesses to one geographical area.

The North Carolina Court of Appeals, in Jackson's third appeal, saw "no proof by defendant that the testimony of these additional witnesses (the seven who were not subpoenaed) would not be cumulative." *State v. Jackson*, 30 N.C.App. 187, 226 S.E.2d 543, 544 (1976). The district court disagreed. It ruled that the trial court's geographic restriction on the witnesses that the petitioner could procure at state expense was "unreasonable [because] the location of the witnesses at the time of trial bore no relation to the strength or relevance of the testimony which they might have had to offer." The district court concluded that at least two, and perhaps four, of the out of state witnesses who were not subpoenaed would have contributed substantially to the petitioner's case.

The petitioner suffered no constitutional prejudice from the absence at his third trial of at least six of the seven witnesses whom the trial court did not subpoena.[3] The petitioner's brother, Jimmy Jackson, testified voluntarily. Mike Strickland (not subpoenaed) would have given testimony equiva-

---

**2.** The trial judge apparently believed that the petitioner had requested only eleven out of state witnesses, while the record shows that he sought the testimony of twelve.

There was another witness whom the trial court refused to subpoena, Benjamin F. Thomas, III, an agent of the South Carolina Law Enforcement Division. His testimony would have been to the effect that another man had told him that he (the other man) and another had committed the robberies for which Jackson was convicted.

The defendant made no other effort to have Thomas come to the criminal trial, and the trial judge, probably correctly, remarked that Thomas would not have had to be subpoenaed in any event since he was a law enforcement officer. The trial court's remark is corroborated by the fact that Thomas attended the habeas corpus proceeding in the district court without subpoena.

Viewed in one light, this is merely alibi testimony and cumulative, but viewed under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), it may not be. The evidence was not claimed in the state court, in the district court, or here, to be admissible under *Chambers* or *Green*, and that issue has never been tried. We express no opinion on that question, and our decision does not preclude further inquiry if Jackson be so advised.

**3.** The seventh being Thomas. See footnote 2.

lent to that of Garland Barrett who was subpoenaed and present at the trial. Barrett, however, was not asked by the defense to take the witness stand.

The testimony of Jackson's employer, Gary Carpenter, in the first trial was read into evidence at the third trial. Mrs. Carpenter's testimony would have been to the same effect as her husband's. The substance of both their testimony would have been that Jackson was at work at or near the time of the robbery. Clayton Springs, who lived in Topeka, Kansas, would have testified similarly to Charles McDuffie. The trial court did subpoena McDuffie, a North Carolina resident, who stated that he did not attend the trial because he could not drive. No issue of his absence was made at the trial and he was not sent for. Cleo Brennan's testimony would have placed the petitioner in Bennettsville at the same time as did Aaron Brown's testimony—at the approximate time of the robbery. Brown was neither a relative nor a close friend of the petitioner. We think the State did not violate the petitioner's constitutional rights by failing to subpoena these six cumulative witnesses. Any difference in the quality of the testimony of those present and absent was not of constitutional dimensions. See, e.g., *United States v. Gallagher*, 620 F.2d 797, 799–800 (10th Cir. 1980), cert. den. 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100 (1980); *Wagner v. United States*, 416 F.2d 558, 564 (9th Cir. 1969), cert. den. 397 U.S. 923, 1015, 90 S.Ct. 915, 1249, 25 L.Ed.2d 104, 429, 399 U.S. 915, 90 S.Ct. 2218, 26 L.Ed.2d 572 (1970).

The judgment of the district court is REVERSED.