Freddie STARKS, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 49A02–9002–PC–134.

Court of Appeals of Indiana,
Second District.

Jan. 30, 1991.

Rehearing Denied March 20, 1991.

Susan K. Carpenter, Public Defender, Victoria Christ, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., for appellee.

SHIELDS, Presiding Judge.

Freddie Starks appeals the adverse judgment on his petition for post-conviction relief.

We affirm.

ISSUE

1. Whether Starks's guilty plea was neither intelligent nor voluntary because:

    a. it was motivated by an improper threat by the State;

b. he was not advised of the possibility of an increased sentence due to his prior convictions; or

c. he did not understand the terms of his plea agreement.

2. Whether Starks was afforded his right to effective assistance of counsel.

## FACTS

Starks was charged with three counts of child molesting as class B felonies, one count of child molesting as a class C felony, and one count of confinement as a class D felony. More than five months later, he filed a written plea agreement. In the agreement Starks agreed to plead guilty to two counts of class B child molesting and to the one count of confinement. In return, the State agreed to dismiss the other two counts and to recommend concurrent sentences "with open sentencing as to any other terms of conditions." Record at 29.

The guilty plea court accepted the plea and sentenced Starks to two concurrent twenty-year terms and to one concurrent four-year term.

Thereafter, Starks filed his petition for post-conviction relief. Following an evidentiary hearing the post-conviction court denied Starks's petition. This appeal ensued.

## DISCUSSION AND DECISION

### I.

Starks argues his guilty plea was not made knowingly voluntarily and intelligently.

### A.

■ Count I of the charging information alleged Starks committed an act of deviate sexual conduct (fellatio) with the ten-year old victim; count II alleged an act of coitus with the victim; count III alleged an act of deviate sexual conduct which involved Starks's sex organ and the victim's anus; count IV alleged fondling with the intent to arouse or satisfy Starks's sexual desires; and count V alleged an act of confinement by removing the victim from one residence to another and then to an unknown loca-

tion. All the acts allegedly occurred on April 30, 1988.

Starks claims his counsel and the guilty plea court misadvised him that seventy-two (72) years, rather than twenty-four (24) years, was the maximum sentence he could receive if he were to go to trial. Citing *Ellis v. State* (1988), Ind., 528 N.E.2d 60 and *Lane v. State* (1989), Ind.App., 539 N.E.2d 488, Starks argues the double jeopardy clauses of the United States and Indiana Constitution would have permitted only his conviction on one count of child molesting and one count of confinement for which he could have been sentenced to a maximum of twenty-four (24) years. Starks therefore concludes his guilty plea was not knowing, voluntary and intelligent because it was motivated, induced and coerced by incorrect information as to the maximum term of imprisonment he was facing.

As the result of an assault upon his fifteen-year-old stepdaughter, the defendant in *Ellis* was convicted of child molesting as a class C felony and as a class D felony, and of incest and rape. In addition he was determined to be an habitual offender. The evidence revealed Ellis fondled the victim and when she resisted his advances, he forcibly raped her. Although the supreme court found the evidence was sufficient to sustain the multiple convictions, it concluded the trial court erred in sentencing Ellis for child molesting as a class C felony and for incest. In so doing, the court stated the multiple sentences were erroneous because "the charging information, although charging two acts of molestation, relied upon the identical incident to support both charges. The trial court committed the same error in sentencing [Ellis] for both the crime of incest and the crime of rape. Here again, the charging information alleged a single act to support both charges." 528 N.E.2d at 61.

Although it appears from the foregoing statement that the supreme court was saying that "sentences for both fondling and sexual intercourse, under separate subsections of the Child Molesting statute, could not stand because both relied upon the

identical incident" (Appellant's brief at 18–19) that is not the case. In reaching its decision the *Ellis* court relied upon its decision in *Hansford v. State* (1986), Ind., 490 N.E.2d 1083 wherein it stated "[t]he imposition of two sentences for the same injurious consequences which were sustained by the same victim and inflicted by the defendant's singular act violatives [sic] both federal and state double jeopardy prohibitions." 490 N.E.2d at 1089. It is important to understand this statement was made in the context of a discussion whether a *single injury* to a *single victim* could be used to enhance both a burglary count and a robbery count to class A felonies. There was no question concerning the validity of the convictions for the basic burglary and the basic robbery. Therefore, we conclude the "same injurious consequences" which the *Ellis* court held could be punished only once was the single act of sexual intercourse. This conclusion is substantiated by the fact the supreme court ordered Ellis's convictions for the class C felony child molesting and the class D incest expunged and affirmed his convictions for the class D child molesting and the rape as enhanced by the habitual offender determination. Thus, the *Ellis* court specifically allowed Ellis to be sentenced for both the sexual intercourse and for the fondling which occurred prior to, and distinct from, the sexual intercourse.

■ In summary, *Ellis* does not prohibit sentences for both fondling and sexual intercourse, as acts of child molesting, even if the acts arise from the same incident, in the sense of the same occasion, if the acts are distinct and separate and not preparatory and incidental to one another.

*Lane* is an example of a situation where a conviction of both a class C and a class D child molesting cannot stand because the conduct constituting the class D offense is preparatory and incidental to the class C offense. In *Lane* the defendant removed the clothing of the victim, fondled her and then engaged in sexual intercourse with her. The two convictions were prohibited by the statutory definition of "included offense" as "an offense that ... differs from the offense charged only in the respect that

a less serious harm or risk of harm to the same person ... is required to establish its commission." IC 35–41–1–16(3) (1988). Although inexorably egregious, the harm from a sexual fondling preparatory and incidental to an act of sexual penetration is less egregious than the harm resulting from the ensuing act of sexual intercourse or deviate criminal conduct.

Here, the evidence is that Starks forced the victim to commit fellatio; then after her unsuccessful attempt to get help, Starks had vaginal and then anal intercourse with the victim. Thereafter, Starks again forced the victim to engage in an act of fellatio, to "lick his butt", and to again engage in coitus. Based upon this evidence Starks could have been convicted of three class B child molesting counts and one class C count; the multiple convictions would not have been prohibited by double jeopardy protections or by statute. The act of coitus and the two (2) acts of deviate sexual conduct were separate and distinct acts although occurring within a relatively short span of time. Further, each act was the source of a distinct and separate harm to the victim; none of the acts were preparatory and incidental to another. Also, the fondling count could have been based upon either the second act of fellatio, the second act of coitus, or the victim being forced to lick Starks's posterior. Each act was separate and distinct and none of the acts were incidental and preparatory to another.

Because Starks was facing a maximum sentence of seventy-two (72) years, the factual basis for his claim his plea was not knowing, voluntary and intelligent based upon misadvice, coercion and threats does not exist. The post-conviction court properly denied him relief on that basis.

## B.

■ There is no factual basis for Starks's claim his guilty plea was defective because he was not advised his prior convictions could be used to enhance his sentence prior to his pleading guilty. During the guilty plea proceeding, the guilty plea court initialled and executed a document entitled "Guilty Plea Proceeding." It recites that "[t]he defendant personally ap-

pearing before me, I have ascertained the following facts, noting each by initialing it." One of the "facts" initialled reads: "5. That the defendant does have *a prior conviction* and he understands the possibility of an increased sentence based on that fact, or the fact the defendant *was on probation or parole at the time of the crime.*" Record at 42 (emphasis in original). Following the judge's signature, the following paragraph appears:

I certify that the judge *personally advised me of the above matter,* that I understand the constitutional rights that I am giving up by the plea of guilty to the charge (s) stated. I further certify that I have been assisted by counsel and have no complaints against counsel in the handling of this case."

Record at 42 (emphasis added). Stark signed the acknowledgment.

In addition, Starks's counsel testified he always explains to each of his clients "what the Court can consider, like prior convictions.... I am positive I did it with Mr. Starks, because as I say, I do it every case, and I know of no reason why I would make an exception of Mr. Stark." Record at 222–23.

The post-conviction court's determination Starks was advised of the possibility of an aggravated sentence due to his prior convictions is supported by the evidence.

### C.

■ Starks attacks the voluntariness and intelligence of his guilty plea based upon his claim he "was not advised and did not understand that the plea agreement term 'open sentencing' permitted the prosecutor to argue during the sentencing hearing." Appellant's brief at 27. The provision of the plea agreement in question reads:

5. At the time of taking the guilty plea, and again at the time of the Defendant's sentencing, the State will recommend concurrent sentences, with open sentencing as to any other terms or conditions.

Record at 29.

At the post-conviction hearing Starks claimed he did not understand the plea agreement term permitted the State to argue for a particular sentence during the sentencing hearing. In contrast to that self-serving testimony, Starks testified at the guilty plea hearing he felt he understood *all* the terms of the plea agreement. In addition, at the post-conviction hearing, his guilty plea counsel testified he "went over the plea agreement in detail with [Starks]", Record at 220, and that he took additional time with Mr. Starks discussing and explaining the plea agreement until there was no doubt in the attorney's mind but that Starks understood the agreement. Based upon this evidence the post-conviction court reasonably concluded Starks understood the open sentence provision of the plea agreement.

The post-conviction court did not err in determining Starks understood the sentencing provision.

Further, the post-conviction court reasonably could have concluded Starks did not meet his burden of proving he was prejudiced had he misunderstood the provision. The evidence reasonably supports the conclusion that had Starks known the State would argue for the maximum available twenty-four (24) year sentence, he would still have pled guilty rather than face a maximum seventy-two (72) year sentence.

In summary, our review of the record, based upon the parties' arguments, convinces us the post-conviction court properly concluded Starks's guilty plea was voluntary and intelligent.

### II.

■ Starks claims he was denied his right to effective assistance of counsel during the guilty plea proceedings. His burden is to prove his counsel's performance was outside the range of competence demanded of counsel in a criminal case and to prove there is a reasonable probability, but for his counsel's deficient performance, he would not have pled guilty but would have insisted on going to trial. *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88

L.Ed.2d 203; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

According to Starks his counsel was incompetent because he failed to evaluate the double jeopardy aspects of the charges against him and advise him accordingly, failed to explain the plea agreement to him and failed to advise him of consecutive sentencing due to his status as a parolee at the time the instant offenses were committed.

The disposition of Starks's unknowing, involuntary, and unintelligent plea agreement argument based upon double jeopardy considerations and Starks's lack of understanding of his plea agreement, render his incompetent counsel claim based upon the same contentions meritless. Neither is there a factual basis for his argument his counsel failed to advise him of the sentencing situation due to his status as a parolee. The evidence construed most favorable to the post-conviction court's judgment reveals Starks's counsel advises all his clients "unequivocally that if he does have a parole violation or probation violation, that time, and the Court will instruct him, that that time will be served first before he begins serving any sentence that the Court may impose upon him." Record at 223–24. In addition, at the guilty plea hearing, the guilty plea court specifically asked Starks if he was on parole. When Starks responded affirmatively, the court told him: "You understand that if they violate you [sic], that you will have to serve that time consecutively to any time that you receive here.... You have to do your back-up time for the parole before you do any time that you receive here." Record at 78.

There is no merit to Starks's argument he was not afforded his right to effective assistance of counsel.

Judgment affirmed.

RATLIFF, C.J., and BUCHANAN, J., concur.