Arthur **WATKINS**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 79A02–8909–CR–457 [1].

Court of Appeals of Indiana, First District.

May 21, 1991.

Susan K. Carpenter, Public Defender and David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Arthur Watkins appeals his conviction and sentencing on three counts of child molesting and a fourth count of being an habitual offender, for which Watkins received a sentence totaling fifty years.

We affirm in part and reverse in part.

Watkins states the issues for review as:

(1) whether the verdicts are supported by sufficient evidence;

(2) whether the trial court denied Watkins due process of law by refusing to allow Watkins to introduce the results of his polygraph examination;

(3) whether the convictions and sentences on all three child molesting counts violate Watkins' constitutional right against double jeopardy; and

(4) whether the sentences imposed are manifestly unreasonable.

In amended count one, the State charged that "[o]n or about the 19th day of November, 1988 in Tippecanoe County, State of Indiana, Arthur J. Watkins did perform and submit to fondling and touching of [J.W.], a child under the age of twelve years of age, with the intent to arouse and satisfy his sexual desires ..." Amended count two alleges that on or about November, 1988, Watkins did knowingly and intentionally

attempt to commit the crime of child molesting by knowingly and intentionally engaging in conduct which constituted a substantial step toward the commission of the crime, namely, that Watkins did knowingly and intentionally lie on top of J.W. while J.W. was nude and lying face down and place his penis around and against the anal area of J.W. with the intent to engage in sexual deviate conduct with J.W. Lastly, with respect to amended count three, the State alleged that Watkins did perform and submit to deviate sexual conduct, to wit: an act involving the penis of Watkins and the mouth of J.W., a child under the age of twelve years.

## I.

Watkins challenges the sufficiency of the evidence to sustain the verdicts in two respects. First, he contends that there is a total failure of evidence to support the allegations of count III which charged him with child molesting by performing or submitting to deviate sexual conduct with J.W., a child under twelve years. Second, Watkins maintains that the State has also failed to prove by credible, probative evidence the allegations of any of the counts because the only evidence that the acts occurred as alleged came from the victim whose testimony is unworthy of belief as a matter of law. Watkins attacks the testimony offered by the State from pediatrician Beesley on the ground that the doctor's opinion lacks a valid scientific or medical basis.

■ With respect to the allegations of count III, we have examined the record and indeed have found no in-court testimony from the victim supporting the jury's verdict on that count. However, there is uncorroborated evidence in the form of prior statements from the victim substantiating the charge of deviate sexual conduct involving the mouth of the victim and the penis of the defendant as alleged in count III. The State submits that this evidence can be properly considered as substantive evidence under *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. No challenge is made by Watkins to the admissibility of this evidence. Watkins himself offered into evidence the statements made to police.

It is an abuse of the *Patterson* rule for the State to put in substantive evidence of the witness-declarant's version of the facts solely through the admission of the witness' prior statement and in lieu of available and direct testimony of the witness. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, 1130, *cert. denied* (1983), 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284. Out-of-court declarations cannot be used as a substitute for available in-court testimony. *Edwards v. State* (1986), Ind., 500 N.E.2d 1209, 1211. At some point, the State must put the declarant of the prior statement on the witness stand and elicit direct testimony as to the facts at issue. *Lewis*, 440 N.E.2d at 1130.

In the present case, the State failed to elicit any foundational testimony regarding the conversations between either J.W. and his mother or J.W. and the State's investigators or regarding the content of those conversations. Although J.W. acknowledged on cross-examination that he had in fact given a statement, he did not specifically acknowledge the written statement or his signature on it as the statement he had given. In fact, he either denied making or denied any memory of making many of the statements attributed to him in the document. Watkins did not pursue the factual basis underlying the count III deviate sexual conduct charge when he questioned J.W. about his statements to police and neither did the State. Neither party asked J.W. specifically about the statements attributed to him by his mother, which came into evidence before J.W. testified.

Thus, as in *Jackson v. State* (1985), Ind. App., 485 N.E.2d 144, *trans. denied*, we are put in the position of affirming a conviction when the only evidence of an essential element is classic hearsay evidence. "Hearsay evidence, standing alone and not clothed with [the] indicia of reliability associated with the exceptions which may render it admissible, is not sufficient evidence of probative value to sustain a conviction." *Id.* at 147. *Cf. also, Plan–Tec, Inc. v.*

*Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1232–33. Accordingly, we conclude that Watkins' conviction of count III cannot stand.

■ Watkins urges us to reverse the convictions on the other two child molesting counts on the ground that the testimony of J.W. is inherently improbable and unworthy of belief as a matter of law. However, the cases in which we have found testimony of a witness to be inherently improbable or of incredible dubiosity, and hence insufficient to induce a belief of the defendant's guilt beyond a reasonable doubt, have either involved situations where the facts as alleged could not have happened as described by the victim and be consistent with the laws of nature or human experience, *see e.g., Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240 (reversing conviction based solely on prosecutrix's uncorroborated allegations of a consensual *menage a trois* between the prosecutrix, the defendant, and the defendant's wife), or the witness was so equivocal about the act charged that his uncorroborated and coerced testimony was riddled with doubt about its trustworthiness, *see Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658 (reversing conviction based on testimony of witness who had been subjected to pressure and threat of imprisonment if he did not testify). In each of these cases, the victim or witness' testimony was not corroborated by direct or circumstantial evidence and the only evidence of guilt was so lacking in probative value that the court determined it was inadequate to surmount the burden of proof beyond a reasonable doubt.

In the present case, J.W.'s testimony that his father fondled his genitals and placed his "private" in the boy's rectum is substantiated in part by the testimony of J.W.'s mother who told the jury that upon awakening to what she perceived to be sounds of someone having sex in the living room, she turned on the light in her daughters' room, heard scuffling noises, and found her nude, eight-year-old son under a blanket on the living room floor and his father on the couch. Realizing what had been going on, she directed J.W. to the bathroom where she examined him and found a jelly-like substance around his rectum. When J.W.'s mother confronted Watkins about the boy being in the living room without his pajamas on, Watkins explained that J.W. had wet the bed, but when J.W.'s mother checked J.W.'s bedclothes, they were dry.

Without question, the record discloses that J.W. was having difficulty discerning his dreams from reality and had perceived his father performing criminal acts against other children, the circumstances of which are difficult to believe. However, J.W. did not equivocate about the acts which his father performed on the morning in question or about the fact that those events did occur. That J.W. was not dreaming about the charged events is substantiated by his mother's testimony. For these reasons, we must conclude that J.W.'s credibility was properly an issue for the jury and that its verdicts are supported by substantial evidence of probative value.

Watkins spends a substantial portion of his brief challenging the testimony of Dr. Beesley, the pediatrician who examined J.W. at the request of the State. In short, Dr. Beesley opined that the laxity of J.W.'s rectum, an old scar at the 6:00 position, and a slight increase in pigmentation around the anus were conditions which were not "normal" for a child of J.W.'s age and were compatible with repeated abuse or trauma. Watkins contends that Dr. Beesley's testimony is lacking in probative value because his opinion does not have a scientific or medical basis. He offers an article from a legal publication in which the author suggests, among other things, that unsupported claims can be passed off as medical evidence because physicians have no way of checking the accuracy of their conclusions, which are often colored by the history given them from the victim. Until a range of normality has been established based upon empirical research, what is perceived by physicians "experienced" in detecting sexual abuse as "consistent with" sexual trauma might in fact be consistent with the population as a whole and hence, nonabuse.

At trial, Watkins did not challenge Dr. Beesley's qualifications as an expert, the foundation for his opinion, or the admissibility of his testimony. Consequently, though the article submitted by Watkins raises some interesting questions about the weaknesses of expert medical evidence in child molesting cases, we must reiterate that the issue on appeal is not the admissibility of this testimony but rather its sufficiency to support a verdict. Ordinarily, assuming the witness is competent to testify as an expert, matters such as those discussed are properly subjects of cross-examination. As the supreme court observed in *Strong v. State* (1989), Ind., 538 N.E.2d 924 *quoting Noblesville Casting Div. of TRW v. Prince* (1982), Ind., 438 N.E.2d 722:

> Once the foundational requirements have been satisfied and the opinion elicited, the expert witness is subject to the hallmark of our adversarial system—cross-examination. The strengths and weaknesses of the expert's opinion may be questioned against the facts, its conclusiveness or lack thereof may be explored, and any lack of certitude may be fully revealed to the finder of fact.
>
> Thereafter, as is virtually the unanimous rule in this nation's jurisdictions, the jury is free either to accept or reject the opinion of the expert witness; the finder of fact may supplant its own conclusion for that of the expert. *White v. Crow*, (1964) 245 Ind. 276, 198 N.E.2d 222; *City of South Bend v. Users of Sewage Disposal* (1980) Ind.App., 402 N.E.2d 1267. The finder of fact is entitled to weigh and determine the credibility to be accorded the expert's opinion based on the evidence presented, including the extent of the witness's experience and expertise, the reliability of the analytical methods employed, and the degree of certitude with which the opinion is cast. *State v. Vaughan*, (1962) 243 Ind. 221, 184 N.E.2d 143; *Kranda v. Houser–Norborg Medical Corp.*, (1981), Ind.App., 419 N.E.2d 1024. ... [A]n expert's opinion that something is "possible" or "could have been" may be sufficient to sustain a verdict or award when it has been rendered in conjunction with

other evidence concerning the material factual question to be proved.

538 N.E.2d at 930–31.

Inasmuch as Dr. Beesley's medical opinion was not the sole evidence of probative value offered to the jury that J.W. had sustained sexual abuse, when considered with the other evidence recited above, it is sufficient to sustain the verdict.

## II.

■ Watkins next alleges that he was denied due process of law by the prosecutor's decision not to stipulate to the admission of his polygraph results and by the State's failure to state any valid reason for its refusal. Watkins took the test without first consulting with the State or attempting to obtain a stipulation or waiver. He then filed a motion seeking to have the court compel the prosecution to justify its refusal to agree to the admission of the results. Having passed the first exam, Watkins argues that the State's inability to participate in the selection of an examiner and in monitoring the conditions under which the test was administered were not valid reasons for the State's withholding of its consent since he indicated he would agree to take a second examination and would permit the State to select the examiner.

Watkins relies solely upon *McMorris v. Israel* (7th Cir., 1981), 643 F.2d 458, *cert. denied* (1982), 455 U.S. 967, 102 S.Ct. 1479, 71 L.Ed.2d 684, in which the seventh circuit held that a criminal defendant's due process rights may have been violated by a Wisconsin prosecutor's refusal to stipulate, without articulating justifiable reasons, to a defendant's offer to stipulate to the admission of polygraph evidence. At the time, Wisconsin had adopted the premise that polygraph examinations had become more reliable and had achieved such a degree of scientific recognition that their unconditional rejection was no longer appropriate. Having recognized the evidentiary value of polygraph examinations, the court concluded that Wisconsin became bound to admit or exclude such evidence in a manner consistent with due process. Allowing the

State purely tactical veto power would serve no proper state purpose.

Whatever the soundness of the *McMorris* decision's constitutional analysis, *see Milano v. Garrison* (4th Cir., 1981), 677 F.2d 374; *Jackson v. Garrison* (4th Cir., 1981), 677 F.2d 371, 373, *cert. denied*, 454 U.S. 1036, 102 S.Ct. 578, 70 L.Ed.2d 482; *Conner v. Auger* (8th Cir., 1979), 595 F.2d 407, 411, *cert. denied*, 444 U.S. 851, 100 S.Ct. 104, 62 L.Ed.2d 67; *United States v. Bohr* (8th Cir., 1978), 581 F.2d 1294, *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (all holding that a defendant's constitutional right to a fair trial is not infringed when the prosecutor refuses to stipulate to the admissibility of polygraph test results), the seventh circuit has itself distinguished *McMorris* in appeals originating from criminal prosecutions in Indiana on the basis that the evidentiary rule in Wisconsin was one recognizing the reliability of polygraph evidence while Indiana has never adopted the view that polygraph examinations are scientifically reliable. *See Dean v. Duckworth* (7th Cir., 1984), 748 F.2d 367, *cert. denied* (1985), 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 335. In Indiana, we have held that the State has no duty to stipulate to the admission of polygraph test results. *Hestand v. State* (1986), Ind., 491 N.E.2d 976, 979. And, the mere refusal to offer a polygraph examination does not mean that the State has stifled the defendant's efforts to prove his innocence. *Helton v. State* (1980), 273 Ind. 211, 402 N.E.2d 1263, 1265. The seventh circuit has also refused to adopt the Wisconsin approach in the trial courts under its supervision, observing that the *McMorris* court expressly rejected the contention that polygraph evidence was so reliable as to be of constitutional significance. *United States v. Black* (7th Cir., 1982), 684 F.2d 481, *cert. denied* (1983), 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613, 459 U.S. 1118, 103 S.Ct. 756, 74 L.Ed.2d 973.

Watkins has not developed a constitutional argument independent of *McMorris;* therefore, we find it sufficient simply to distinguish *McMorris* on the basis that in Indiana the results of a polygraph examination are not considered sufficiently reliable to be competent evidence and that alone is a valid justification. Watkins' due process rights were not violated by the State's refusal to stipulate to the admission of otherwise incompetent evidence or in failing to adequately justify its refusal.

### III.

■ Watkins next claims his convictions and sentencing on both counts I and II result in double punishment for the same act in violation of the constitutional prohibition against double jeopardy. He relies upon *Ellis v. State* (1988), Ind., 528 N.E.2d 60 and *Lane v. State* (1989), Ind.App., 539 N.E.2d 488.

We do not find *Ellis* to be persuasive authority for Watkins' position. In that case, the State charged four counts: child molesting as a class C felony, child molesting as a class D felony, incest, and rape for two separate and distinct acts: a fondling and forcible sexual intercourse. The supreme court expunged the class C felony child molesting sentence because the charging informations, though charging two acts of molestation, relied upon the identical "incident" to support both charges. The court also vacated the sentence for the crime of incest because "[h]ere again, the charging information alleged a single *act* to support both charges." Consequently, though the supreme court did set aside two sentences on double jeopardy grounds, it let stand sentences for both fondling and sexual intercourse.

The result in *Ellis* is consistent with the supreme court's earlier holding in *Buck v. State* (1983), Ind., 453 N.E.2d 993. Though not decided as a double jeopardy question, the *Buck* court held that deviate sexual conduct charged as child molesting under Ind.Code 35–42–4–3(a) and touching or fondling with intent to arouse sexual desires under I.C. 35–42–4–3(b) are two separate and distinct crimes, neither of which is a lesser included offense of the other. The evidence in that case consisted of photographs depicting the defendant and victim in poses involving fondling and cunnilingus. *Cf. also, Scrougham v. State* (1990),

Ind.App., 564 N.E.2d 542, *trans. denied* (holding constitutionally proper to sentence on rape and sexual battery convictions where evidence showed defendant "fondled and raped" victim). We find *Buck* to be directly on point here where the State charged Watkins with fondling and touching with the intent to arouse and satisfy his sexual desires in violation of the child molesting statute, I.C. 35–42–4–3(b), and attempted deviate sexual conduct involving Watkins' penis and the anus of the victim in violation of the statutes prohibiting attempt crimes, I.C. 35–41–5–1, and child molesting, I.C. 35–42–4–3(a); and, the State proved two separate set of facts: that Watkins touched J.W.'s "private parts" with both his hands and his mouth and "stuck his private up [J.W.'s] rear end."

Notwithstanding our reading of *Ellis* and our belief in the applicability of *Buck*, we are compelled to distinguish in a principled way the holdings in *Bowling v. State* (1990), Ind., 560 N.E.2d 658 and *Lane v. State* (1989), Ind.App., 539 N.E.2d 488, both of which cite *Ellis* as authority. In *Bowling*, the supreme court set aside a class C felony child molesting conviction utilizing the language of *Ellis* "that the two acts of molestation occurred in 'the identical incident to support both charges'" and the rationale that sentencing on both counts constituted the imposition of two sentences for the same injurious consequences. There, the victim testified that the defendant "fondled her vagina, placed his finger in her, then committed cunnilingus upon her." In *Lane*, the second district of this court vacated Lane's class D child molesting conviction, holding that the informations charged two acts but the State relied upon the identical incident to support both counts. There, the evidence showed that the defendant forced the victim to a loft in the garage, removed her clothes, rubbed her breasts and engaged in sexual intercourse with her.

We perceive *Bowling* and *Lane* as cases in which the charged acts of fondling were so temporally related to the acts of deviate sexual conduct or intercourse as to render the associated harms indistinguishable or insignificant for double jeopardy purposes.

*See Bowling*, 560 N.E.2d at 660 (Imposition of two sentences *for the same injurious consequences* sustained by the victim during a single confrontation violates double jeopardy prohibitions); *Starks v. State* (1991), Ind.App., 565 N.E.2d 1142. In the present case, we are not prepared to say that the harm sustained by J.W. in having his own sex organ touched by Watkins' hands or mouth was no different or any less egregious than the harm ensuing from the act charged as deviate sexual conduct, which involved the sex organ of Watkins and the anus of the victim, such as would render the crimes factually lesser included offenses within the meaning of I.C. 35–41–1–16(3) or constitute the same injurious consequences for double jeopardy purposes. *Cf. Starks*, 565 N.E.2d at 1144.

Hence, we conclude that the convictions and sentences on the remaining two counts of child molesting should stand.

## IV.

■ Lastly, Watkins argues that the fifty-year sentence imposed is manifestly unreasonable given his character and the nature of the offense. Watkins contests the weight assessed by the trial court to the aggravating factors cited: Watkins' prior criminal history, his lack of remorse, the father-son relationship between Watkins and the victim, the fact that Watkins had been molesting his son over a long period of time, and the violation of his son's trust.

On review, this court generally will not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.Appellate Rule 17; *Henley v. State* (1988), Ind., 522 N.E.2d 376. A sentence is not manifestly unreasonable unless no reasonable person could find the sentence appropriate to the particular offense and offender for which the sentence was imposed. *Id.* Sentencing is committed to the trial court's discretion. *Sullivan v. State* (1989), Ind., 540 N.E.2d 1242, 1244. A trial court may increase the basic penalties, impose consecutive sentences or both upon

consideration of the relevant facts. *Smith v. State* (1985), Ind., 474 N.E.2d 71.

The trial court sentenced Watkins to eight years on count I to run concurrently with a twenty-year sentence on count II, count II to be enhanced by thirty years due to the habitual offender count for a total of fifty years. At the time of sentencing, the presumptive sentence for a class C felony was five years with a possible three years added for aggravating circumstances or subtracted for mitigating circumstances, I.C. 35–50–2–6, while the presumptive sentence for a class B felony was ten years with a possible ten years added for aggravating circumstances or four years subtracted for mitigating circumstances. I.C. 35–50–2–5. An additional fixed term of thirty years imprisonment, added to the term of imprisonment of another felony, is the presumptive sentence for a person found to be an habitual criminal. I.C. 35–50–2–8(c).

At first blush, the sentence imposed does not appear to us to be manifestly unreasonable given the nature of the offender and offense. The record shows an extensive criminal history consisting of at least six felony convictions over a period of ten years, criminal activity not reduced to conviction in the form of drug use, and the ongoing molestation of J.W., Watkins' son, from the time he was four years old, even during the period of J.W.'s life when he was in a body cast. The trial court also cited as a reason for the sentence Watkins' lack of remorse, evidenced by Watkins' statements at sentencing during which he attributed the evidence of the crime to his son's and wife's perjury. There is no general prohibition against using lack of remorse as a sentencing factor, particularly where as here, there is evidence of guilt beyond that offered by the victim. *Owens v. State* (1989), Ind., 544 N.E.2d 1375, 1378; *Mahla v. State* (1986), Ind., 496 N.E.2d 568, 572.

Hence, this case is not unlike *Kelly v. State* (1983), Ind., 452 N.E.2d 907 where the trial court imposed maximum sentences on child molesting and incest counts and thirty years on the habitual offender count on the basis of the defendant's prior criminal history and the fact that the defendant had been molesting his two daughters over a long period of time. The supreme court determined in *Kelly* that such a sentence was not manifestly unreasonable under the circumstances. We likewise are unable to conclude that no reasonable person would find Watkins' sentence to be appropriate.

For the foregoing reasons, the judgment of conviction on count I for eight years and on count II for twenty years plus the habitual offender enhancement of thirty years making a total of 50 years is affirmed. The conviction on count III is set aside.

BUCHANAN, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur with respect to Issue II. I concur with respect to Issue I insofar as it invalidates the conviction for Deviate Sexual Conduct under Count III and insofar as it concludes that the evidence is sufficient to support the conviction for Attempted Child Molesting.

I dissent with respect to Issue III and with that portion of the discussion under Issue IV which relates to lack of remorse as an aggravating factor in the case before us.

As to Issue III, by reason of double jeopardy considerations, there should be but one conviction upon the substantive charges embraced within Counts I and II. That conviction is amenable to a 30 year enhanced sentence as a result of the habitual offender determination for a total sentence of 50 years.

All of the substantive charges here were alleged to have occurred on the single occasion when J.W. came into the area where defendant was on the couch. The fondling alleged in Count I was an integral and inseparable aspect of the attempted child molesting charged within Count II. Under the prior decisions of our Supreme Court in *Bowling v. State* (1990) Ind., 560 N.E.2d 658; *Wethington v. State* (1990) Ind., 560

N.E.2d 496; and *Ellis v. State* (1988) Ind., 528 N.E.2d 60; and under previous decisions of this court in *Ryle v. State* (1990) 2d Dist., Ind.App., 549 N.E.2d 81, *trans. denied; Owens v. State* (1989) 4th Dist., Ind.App., 543 N.E.2d 673; and *Lane v. State* (1989) 2d Dist., Ind.App., 539 N.E.2d 488, only one of the two convictions may stand.

I would reverse and vacate the conviction upon Count I and would affirm the conviction under Count II and the enhanced sentence imposed for that conviction.

I agree with the majority that the 50 year sentence is not manifestly unreasonable under the circumstances. I do not, however, agree with the majority's characterization of defendant's statements at sentencing as evidencing a lack of remorse.

It is not an aggravating factor for a defendant, in good faith, to consistently maintain his innocence. *Dockery v. State* (1987) 4th Dist., Ind.App., 504 N.E.2d 291. *But see Stewart v. State* (1988) Ind., 531 N.E.2d 1146. It is not unconscionable, even after conviction, for the individual to respectfully maintain innocence and to imply that the trier of fact was mistaken in the determination of guilt. This is particularly so when the facts are in genuine dispute and the question of guilt beyond a reasonable doubt presents an extremely close balancing process with regard to the credibility, or lack thereof, of the various witnesses. In the case before us, the jury could have reasonably chosen to disbelieve the testimony of the young boy and the conclusions drawn from his mother as to the events which took place on that occasion. That they chose the alternative course should not place upon the defendant the absolute duty to abdicate his assertion of innocence.

To hold otherwise would lead one to also logically conclude that a person convicted might not take an appeal claiming insufficient evidence without suffering adverse consequences for his unseemly and disrespectful lack of remorse.

Without question, a defendant under circumstances which clearly reflect guilt, such as his own admission of the crime, should not be heard to proclaim gross insensitivity to the harm caused to his victim or to society. If his words or conduct are the equivalent of "I don't care", he has displayed a lack of remorse.

That is not what occurred here. When at his sentencing, Watkins maintained that J.W. and his wife gave inaccurate, if not perjured, testimony, he was doing nothing more than saying: "I did not do it". He was not saying: "If I did it, so what?". Nevertheless, there were other aggravating factors present which justify the sentence imposed.

I would affirm only the conviction upon the attempt count and the enhanced sentence attributable to the habitual offender determination. I would reverse and order vacated the convictions upon Counts I and III.