## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Michelle F. Kraus
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terry L. Brown,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 25, 2017<br><br>Court of Appeals Case No.<br>02A05-1612-CR-2917<br><br>Appeal from the<br>Allen Superior Court<br><br>The Honorable<br>Frances C. Gull, Judge<br><br>Trial Court Cause No.<br>02D05-1607-F5-210 |

**Kirsch, Judge.**

[1] Terry L. Brown ("Brown") was convicted after a jury trial of domestic battery with a prior domestic battery conviction against the same victim[1] as a Level 5 felony and sentenced to six years executed. He appeals, contending that the State failed to present sufficient evidence to support his conviction.

[2] We affirm.

## Facts and Procedural History

[3] On July 23, 2016, Brown lived with Jacquelyn Willet ("Willet") at her house on Huffman Street in Allen County, Indiana. Willet and Brown had been dating for six years and had been talking about getting married. That morning, after they woke up, Brown walked to a nearby store to buy a bottle of vodka, and when he returned, they began drinking. An argument soon began about money. Brown wanted to "scrap," or sell, Willet's car and use the money to buy spice and alcohol. *Tr.* at 32, 69. Willet informed Brown that they could not scrap the car because Willet's mother had the title to the car.

[4] Willet's neighbor, Tammy Barrand ("Barrand"), arrived home from work later that day and heard Willet and Brown arguing. During this fighting, Barrand, who shared a wall with Willet's residence, could hear slamming doors and things being banged around. The commotion caused a picture on Barrand's wall to fall down and for her 22-month-old grandson to get upset. As the fight

---

[1] *See* Ind. Code § 35-42-2-1.3(a)(1), (c)(4).

was occurring, Barrand and multiple people in the neighborhood called police because of the commotion.

[5] Barrand went outside her residence onto her porch and shouted at Willet and Brown to "knock it off." *Id.* at 51-52. While Barrand was on the porch, she looked into the window of Willet's residence and saw Brown hit Willet in the head with his fist. *Id.* at 52. This caused Willet to fall to the ground. When Willet attempted to get up, Brown grabbed her by her arm and "whipped her around." *Id.* Brown "kind of" shook Willet and told her, "I said go lay down, I said go lay down." *Id.* Brown proceeded to push Willet "catty-corner," and Willet fell into a TV stand. *Id.*

[6] Several police officers arrived to the residence in response to the 911 calls. Willet told the officers that Brown had struck her in the face three times. The officers noticed that Willet had "a noticeable redness to the right side of her face, her cheek and nose area," which was consistent with being struck. *Id.* 75-76. The officers described it as "a distinctive red mark." *Id.* at 84. The officer arrested Brown, and as he was being put in the police car, Brown said to Willet, "'I'm gonna get you.'" *Id.* at 33. He also screamed obscenities and threatened Barrand and the police. *Id.* at 54, 113-114. At the time of this incident, Brown had a prior conviction for domestic battery against Willet from 2014 under cause number 02D05-1408-CM-3231. *Id.* at 148-50.

[7] On July 28, 2016, the State charged Brown with domestic battery with a prior domestic battery conviction against the same victim as a Level 5 felony and

domestic battery as a Level 6 felony. A jury trial was held, and the jury found Brown guilty as charged. At sentencing, the trial court vacated Brown's Level 6 felony domestic battery conviction based on double jeopardy concerns and sentenced him to six years executed for the Level 5 felony conviction. Brown now appeals.

## Discussion and Decision

[8] Brown argues that the evidence presented at trial was not sufficient to support his conviction. When reviewing the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State,* 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied.* We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from that evidence. *Fuentes v. State,* 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied.* We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 2007). We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Lock v. State,* 971 N.E.2d 71, 74 (Ind. 2012).

[9] Brown was convicted of Level 5 felony domestic battery with a prior domestic battery conviction against the same victim. In order to convict Brown of this crime, the State was required to prove beyond a reasonable doubt: Brown did

knowingly or intentionally touch Willet, who is a family or household member, in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1.3(a)(1). The State also had to prove that, on or about November 4, 2014, Brown was convicted of domestic battery against the same victim, Willet, under cause number 02D05-1408-CM-3231. I.C. § 35-42-2-1.3(c)(4).

[10] Brown contends that the evidence presented by the State at his trial was not sufficient to support his conviction. Specifically, Brown argues that the evidence presented by the State was incredibly dubious because Barrand was the only witness who testified about witnessing a battery and that no physical evidence supported her testimony. Brown asserts that Barrand's testimony was inherently contradictory because she testified at trial that she witnessed a battery occur, but she did not make a statement that she observed it before the day of the trial. Brown maintains this makes Barrand's testimony incredibly dubious, and therefore, the evidence presented was not sufficient to support his conviction. We disagree.

[11] The incredible dubiosity rule provides that a court may impinge on the jury's responsibility to judge witness credibility only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Carter v. State*, 31 N.E.3d 17, 30-31 (Ind. Ct. App. 2015) (citing *Love v. State,* 761 N.E.2d 806, 810 (Ind. 2002)), *trans. denied*. Application of this rule is rare, and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id*. at 31 (quotations omitted). The rule applies only when a witness

contradicts herself or himself in a single statement or while testifying, and does not apply to conflicts between multiple statements. *Id*. (citing *Manuel v. State,* 971 N.E.2d 1262, 1271 (Ind. Ct. App. 2012)). Therefore, to warrant application of the incredible dubiosity rule, there must be: (1) a sole testifying witness; (2) testimony that is inherently contradictory, equivocal, or the result of coercion; and (3) a complete absence of circumstantial evidence. *Smith v. State*, 34 N.E.3d 1211, 1221 (Ind. 2015). "Cases where we have found testimony inherently improbable have involved situations either where the facts as alleged 'could not have happened as described by the victim and be consistent with the laws of nature or human experience,' or where the witness was so equivocal about the act charged that her uncorroborated and coerced testimony 'was riddled with doubt about its trustworthiness.'" *Id*. (quoting *Watkins v. State,* 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991), *aff'd in relevant part,* 575 N.E.2d 624 (Ind. 1991)).

[12] In the present case, Barrand was not the sole testifying witness to Brown's crime. Barrand testified that, as she stood on her porch and looked into Willet's residence through the window, she observed Brown hit Willet in the head with his fist, which caused Willet to fall to the ground. Additionally, several officers who responded to the 911 dispatch testified. They testified that Willet told them that Brown had struck her in the face three times and that they noticed that Willet had a noticeable redness to the right side of her face, which was consistent with being struck. Where there are multiple testifying witnesses, even if not eyewitnesses, the incredible dubiosity rule does not apply. *See Moore*

*v. State*, 27 N.E.3d 749, 757-58 (Ind. 2015) (holding that, when an eyewitness's testimony is challenged as being incredibly dubious, the rule does not apply when there are corroborating witnesses). Additionally, there was circumstantial evidence presented that supported the conviction, including the 911 calls and the officers' testimony that Willet told them that Brown had hit her in the face and that they noticed she had a redness to her face that was consistent with being struck. We, therefore, conclude that the incredible dubiosity rule does not apply.

[13] The evidence presented at trial supported Brown's conviction. The evidence established that Brown struck Willet, who was his girlfriend and with whom he lived, in the face and head area multiple times. Barrand witnessed Brown strike Willet in the head, and Willet told the police that Brown hit her in the face three times. The officers noticed redness on Willet's face area that was consistent with being struck. Testimony was also presented that Brown had previously battered Willet and was convicted of domestic battery in November 2014 in cause number 02D05-1408-CM-3231. Sufficient evidence was presented to support Brown's conviction.

[14] Affirmed.

[15] Mathias, J., and Altice, J., concur.