## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 22 2020, 6:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew R. Falk
Hendricks County Public Defender's Office
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

John R. Millikan
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David P. Guerriero, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 22, 2020 <br><br> Court of Appeals Case No. 19A-CR-1039 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Mark A. Smith, Judge <br><br> Trial Court Cause No. 32D04-1708-F4-24 |

**Bailey, Judge.**

# Case Summary

David P. Guerriero ("Guerriero") appeals his two convictions for child molesting, as Level 4 felonies,[1] and his two convictions for sexual misconduct with a minor, as Level 4 felonies,[2] following a jury trial. The only issue he raises on appeal is whether there was insufficient evidence to support his convictions due to the victim's "incredibly dubious" testimony.

We affirm.

# Facts and Procedural History

Guerriero and Michael Hill ("Hill") met in 1995 as cadets at West Point Military Academy in New York, where they were roommates for four years. Guerriero and Hill were both initially stationed at Fort Sill, Oklahoma before being assigned to different locations. Guerriero and Hill reunited in 2012 in Richmond, Virginia, where Guerriero moved in with Hill and Hill's family. Hill's family includes two minor children, M.H. and a younger daughter, and Hill's wife, "Mary." Guerriero and the Hill family moved to Indiana in 2013, and Guerriero, who stayed with the family periodically after the move, began living with the Hill family on a full-time basis around August of 2016.

---

[1] Ind. Code § 35-42-4-3(b).

[2] I.C. § 35-42-4-9(a)(1).

[4]     On August 2, 2017, the State charged Guerriero with Counts I and II, child molesting as Level 4 felonies, and Counts III and IV, sexual misconduct with a minor as Level 4 felonies. The victim was M.H. At Guerriero's March 12 and 13, 2019, jury trial, the following testimony and evidence was presented.

[5]     M.H.'s mother and father testified that Guerriero developed a relationship with M.H., who called him Uncle Dave. While living with the Hill family beginning in 2016, Guerriero had his own room in the basement, a key to the house, and knowledge of the garage door code. Guerriero was also left alone with M.H. "often" and watched the girls "[a]ll the time." Tr. Vol. II at 238.

[6]     M.H. testified that Guerriero engaged in sexual conduct with her on four occasions between 2013 when the Hill family moved to Indiana and July 12, 2017, when Guerriero moved out. The first instance of sexual conduct happened when M.H. was twelve years old. M.H. was startled awake in the middle of the night by Guerriero, who began touching her while she was in bed. M.H. stated that Guerriero touched "around my private parts and just rubbing like along my thighs and my stomach." Tr. Vol. III at 13. Guerriero began rubbing M.H. on top of her clothes and then touched her underneath her clothes. M.H. stated that the touching "would vary from like my stomach and thighs to around my vagina above where you would put a tampon." *Id.* at 14. M.H. pretended she was asleep because she was afraid and then eventually went to her mother's bedroom and asked her mother if she could sleep with her. Mary told M.H. to return to her room. M.H. did not tell her mother about the

assault at the time because she was afraid of how her mother would react and that she would doubt what M.H. was saying.

[7] The second instance happened when M.H. was twelve or thirteen years old. Guerriero got in bed with M.H. again and started rubbing her under her clothes. M.H. stated that Guerriero "made me hold his penis and continued to just rub around my private parts and my stomach and thighs." *Id*. at 15. The third instance happened after M.H. had turned fourteen years old when M.H. was on a couch in a downstairs living room. M.H. was sitting under a blanket on the couch while her family was outside, and Guerriero approached her and began rubbing her thighs. M.H. stated that Guerriero then sat on the ground and "started licking around my private parts ... under my clothing … right above where you would put a tampon." *Id*. at 18-20.

[8] The fourth instance happened after M.H. returned from church camp in mid-to-late June of 2017. The rest of the Hill family was not at home, and M.H. was sitting on a couch in an upstairs loft, where Guerriero approached her and began rubbing her thighs. M.H. stated that Guerriero "sat down on the ground and put my calves on his shoulders and pulled down my pants and started licking around my private parts again." *Id*. at 21. Guerriero also touched M.H. on the stomach and breasts. The encounter lasted ten to fifteen minutes before M.H. got up to take a shower. Guerriero asked if he could take a shower with her, but M.H. went into the bathroom and locked the door. However, M.H. was still scared because there was a key to the bathroom above the doorframe.

[9]     M.H. first told "one of [her] really good friends at the time" about the sexual assaults in a telephone conversation. *Id.* at 24. Although M.H. described her friendship with this friend as "toxic," she also stated that they were "really good friends." *Id.* at 26. Mary testified that Guerriero abruptly moved out of the house on July 12, 2017, after hearing M.H. read a book out loud to Mary about sex and dating. Mary and Hill testified that, after learning that Guerriero would be returning to the Hill home for a cookout, M.H. told her mother on July 29 about the sexual assaults. Mary and Hill contacted the police about the accusations on July 31, desiring to wait until Monday morning because they assumed that "the people who do this all the time are the people that are there Monday to Friday." Tr. Vol. II at 247.

[10]    Detective Jesse Fulwider ("Det. Fulwider") of the Hendricks County Sheriff's Department also testified. He stated that, after Guerriero's arrest on August 3, 2017, Det. Fulwider obtained a search warrant and searched the short-term rental "facility" where Guerriero was staying. Tr. Vol. III at 59. During that search he recovered an Apple iPad from Guerriero's bedroom. Detective Jeremy Chapman ("Det. Chapman") of the Avon Police Department testified that he did a forensic download of the iPad and printed the downloaded content. Det. Fulwider testified that the printed download from the iPad was contained in State's Exhibit 8, which was admitted over Guerriero's objection. Exhibit 8 contained an article entitled "I Worked as a Lawyer on Child Molestation Cases and Just Because Woody Allen Wasn't Prosecuted Doesn't

Necessarily Mean He's Innocent" that had been saved as a bookmark on Guerriero's iPad. *Id.* at 65.

[11] On March 14, 2019, the jury found Guerriero guilty as charged. Following an April 9 sentencing hearing, the trial court imposed an eight-year sentence on Count I and a six-year sentence on Count II, to run concurrently; a six-year sentence on Count III, to run consecutively to Counts I and II, and a six-year sentence on Count IV, to run consecutively to Counts I, II, and III, with three years suspended to probation. This appeal ensued.

# Discussion and Decision

[12] Guerriero contends that the evidence was insufficient to support his convictions because M.H.'s testimony was the only evidence of his guilt, and it was incredibly dubious.[3] Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact

---

[3] Guerriero does not challenge the sufficiency of the evidence on any grounds other than the alleged incredible dubiosity of M.H.'s testimony.

> could have concluded the defendant was guilty beyond a
> reasonable doubt. *Id.*

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*. Moreover, a conviction may be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[13] Guerriero asserts that the rule of incredible dubiosity applies to the testimony of M.H. and renders the evidence as a whole insufficient to support his convictions. The rule of incredible dubiosity permits the appellate court to impinge upon the factfinder's determination of credibility issues when it is confronted with inherently improbable, coerced, equivocal, or wholly uncorroborated testimony of incredible dubiosity. *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015). Application of the rule is "limited to cases with very specific circumstances because [the Court is] extremely hesitant to invade the province of the jury." *Smith v. State*, 34 N.E.3d 1211, 1221 (Ind. 2015). The standard for invoking the incredible dubiosity rule is not an impossible burden to meet, but it is a difficult one, and testimony must be such that no reasonable person could believe it. *Clark v. State*, 62 N.E.3d 460, 462 (Ind. Ct. App. 2016). In order for the incredible dubiosity rule to apply, there must be (1) a sole testifying witness, (2) testimony that is inherently improbable, contradictory, or coerced, *and* (3) a complete absence of circumstantial evidence. *Moore*, 27 N.E.3d at 756; *cf. Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002) (finding the incredible dubiosity rule inapplicable even when there was a single eyewitness).

[14]  M.H.'s testimony was not inherently improbable, contradictory, or coerced. "Cases where we have found testimony inherently improbable have involved situations either where the facts as alleged 'could not have happened as described by the victim and be consistent with the laws of nature or human experience,' or where the witness was so equivocal about the act charged that her uncorroborated and coerced testimony 'was riddled with doubt about its trustworthiness.'" *Carter v. State*, 31 N.E.3d 17, 31 (Ind. Ct. App. 2015) (quoting *Watkins v. State*, 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991). M.H.'s testimony did not describe scenarios that were so inconsistent with human experience that they could not have happened as described, and her testimony was not equivocal. Furthermore, there was not a complete lack of circumstantial evidence in this case. M.H.'s parents testified that Guerriero had the opportunity and means to be alone with M.H. to commit the acts M.H. described, and the police found an article regarding child molestation cases saved on Guerriero's iPad. That was circumstantial evidence of Guerriero's guilt.

[15]  The evidence was sufficient to support Guerriero's convictions.

[16]  Affirmed.

Kirsch, J., and Mathias, J., concur.